NATIONAL LABOR RELATIONS
BOARD
v.
BURTON–DIXIE CORP.
No. 4728.

United States Court of Appeals,
Tenth Circuit.

Feb. 8, 1954.

---

**200**

Robert S. Fousek, Kansas City, Mo., Atty., National Labor Relations Board (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Frederick U. Reel and Margaret M. Farmer, Attys., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Howard P. Robinson, Chicago, Ill. (Stuart S. Ball, H. Blair White, and Sidley, Austin, Burgess & Smith, Chicago, Ill., on the brief), for respondent.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

This is a petition to enforce an order of the National Labor Relations Board.

The respondent, Burton-Dixie Corporation, in its answer consented to the entry of an enforcement order, except in so far as the Board's order (1) directed it to cease and desist from refusing to bargain collectively with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 452, A. F. of L.,[1] and upon request to bargain collectively with such Union, and (2) directed it to cease and desist from granting wage increases to its employees without first consulting with the Union.

Organizational activities in respondent's plant in Denver, Colorado, began early in February, 1952. Between February 4 and February 7, 1952, employees of the respondent signed cards authorizing the Union to represent them as their collective bargaining agent. On the latter date, at about 1:30 p. m., Bailey, a Union organizer, went to the office of the respondent in Denver and requested Hill, the Denver plant manager, to recognize the Union as the bargaining agent of the employees. Bailey then had 17 cards, which was one short of a majority. Hill stated that he was not sure he had authority to recognize the Union as the bargaining agent and that he would take the matter up with his superiors in Chicago. Bailey testified that he replied that he could not wait and would file a petition with the National Labor Relations Board seeking an election and stated: " * * * if they did agree to bargain with us collectively, I would withdraw it at a later date, * * *." Clearly, the request for recognition was a continuing request and was so understood by Bailey and Hill.

Hill, in his testimony, denied that Bailey requested the respondent to bargain collectively with the Union. A letter written by Bailey immediately after the conversation tends to corroborate Hill's testimony.

Immediately after the conference on February 7, Hill telephoned Sevcik, respondent's general manager at Chicago. Sevcik immediately flew to Denver, arriving the evening of February 7. On February 8, at 12:30 p. m., Bailey, after having received cards from more than a majority of respondent's employees, went to respondent's plant in Denver and engaged in a conversation with an employee, Trujillo, who had been obtaining signed Union cards. Sevcik came out and ordered Bailey off respondent's property. Bailey told Sevcik he was Herb Bailey of the Teamsters' Union;

---

1. Hereinafter called the Union.

that he had had a nice conversation with the local plant manager on February 7. Sevcik stated he did not care what Bailey did on February 7 and told him to get off the property or he would break his back and every bone in his body. Bailey stated he would like to introduce himself and discuss the matter. Sevcik stated he didn't care "what you are, get off the property, and quick." As Bailey was leaving, Sevcik stated: "I will have you understand I operate ten Burton-Dixie plants and no * * * Union ever got in any of them and they will never get in any of our plants." Sevcik interspersed his statements with profane language.

At about 2 p. m., February 8, Sevcik called the employees into a meeting which lasted the remainder of the afternoon. Sevcik addressed the meeting and set forth the benefits the respondent could offer, including bonuses and paid vacations. He called upon Trujillo and another employee, whom he had been informed were assisting in organizing the employees, to state what benefits the Union could offer. Sevcik stated that there would be no Union in the plant and that he would keep only the loyal employees.

During the week of February 11, respondent granted wage increases made retroactive to February 6 to many of the employees. Respondent did not consult the Union with respect to such increases, although it knew that the Union claimed it represented a majority of respondent's employees.

■ The principal issue is whether the respondent refused to bargain with the Union as the representative of respondent's employees. Ordinarily, in order to support a finding of a refusal to bargain collectively, there must be an express request to bargain by the Union and a refusal by the employer.

In National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 297, 59 S.Ct. 501, 504, 83 L.Ed. 660, the court said:

"Since there must be at least two parties to a bargain and to any negotiations for a bargain, it follows that there can be no breach of the statutory duty by the employer— when he has not refused to receive communications from his employees —without some indication given to him by them or their representatives of their desire or willingness to bargain. In the normal course of transactions between them, willingness of the employees is evidenced by their request, invitation, or expressed desire to bargain, communicated to their employer." [2]

■ Here, there was an express request that the respondent recognize the Union as the exclusive bargaining agent of its employees. There was, however, no express request to bargain, but it was clearly implied that such a request would follow recognition of the Union, and we think the statements made by Sevcik to Bailey, fairly construed, amounted, in substance and effect, to an affirmative statement that respondent would not bargain or otherwise deal with the Union as the representative of its employees. Clearly, after Sevcik's statements to Bailey, a request by Bailey that respondent bargain with the Union as the representative of the employees would have been utterly vain and useless and a mere formality. We think that Sevcik's statements amounted to an affirmation that respondent would not bargain with the Union and warranted the Board in finding that respondent had refused to bargain with the Union as the representative of the employees.

■ Respondent's action in granting wage increases without consulting the

**2.** See, also, Atlas Life Ins. Co. v. National Labor Relations Board, 10 Cir., 195 F.2d 136, 138; Joy Silk Mills v. National Labor Relations Board, 87 U.S.App.D.C.

360, 185 F.2d 732, 741; National Labor Relations Board v. Valley Broadcasting Co., 6 Cir., 189 F.2d 582, 586.

Union constituted a violation of § 8(a) (1) and (5) of the National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C.A. § 141 et seq.[3]

The order will be enforced.

3. National Labor Relations Board v. Crompton-Highland Mills, Inc., 337 U.S. 217, 218, 219, 234, 69 S.Ct. 960, 93 L.Ed. 1320; May Dept. Stores Co. v. National Labor Relations Board, 326 U.S. 376, 384, 66 S.Ct. 203, 90 L.Ed. 145.