CITY OF NORWICH *v.* NORWICH FIRE FIGHTERS ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, JS.

Argued April 7—decision released June 28, 1977

*Robert W. Murphy,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant Connecticut state board of labor relations).

*Geurson D. Silverberg,* with whom was *Richard N. Ziff,* for the appellee (plaintiff).

BOGDANSKI, J.   This action arose from a complaint filed by the Norwich Fire Fighters, Local 892, International Association of Fire Fighters, hereinafter the union, with the state board of labor relations, hereinafter the board, on behalf of a retired Norwich fireman, Thomas LaRochelle.   The complaint alleged that the city of Norwich, hereinafter the city, had committed a prohibited labor practice by unilaterally excluding accumulated sick leave pay from the compensation upon which LaRochelle's pension benefits were computed.   On July 11, 1974, after a hearing, the board decided that the city's unilateral modification of benefits was a violation of § 7-470 (a) (4)[1] of the General Statutes, and ordered the city to recompute LaRochelle's benefits and to pay him accordingly, including the difference

---

[1] "[General Statutes] Sec. 7-470. PROHIBITED ACTS OF EMPLOYERS AND EMPLOYEE ORGANIZATIONS.   (a) Municipal employers or their representatives or agents are prohibited from: . . . (4) refusing to bargain collectively in good faith with an employee organization which has been designated in accordance with the provisions of said sections as the exclusive representative of employees in an appropriate unit . . . ."

between the pension payments he had already received and the pension payments as computed pursuant to the board's order. The plaintiff city appealed from that decision to the Superior Court pursuant to § 31-109 (d) of the General Statutes. That court sustained the appeal and set the award aside. From that judgment the defendant board has appealed, assigning error in the conclusions reached by the court.

Prior to August 26, 1970, the personnel and retirement board, as administrators of the firemen's pension fund, computed pension benefits as provided by contract[2] from compensation received by individual firemen during the twelve months preceding their retirements. By past practice, included in that compensation was the value of any accumulated sick leave pay received by the firemen. On August 26, 1970, the city's new corporation counsel ruled that the inclusion of accumulated sick leave pay in the computation of pension benefits was improper. From the time of that ruling, the city (1) recomputed the pensions of persons already retired and started to pay them on the new, reduced basis, and (2) computed the pensions of all persons retiring thereafter by excluding unused sick leave pay.

On December 14, 1969, fireman Clarence Murkett, a member of the bargaining unit, retired under the provisions of the contract, after being told that his unused sick leave pay amounted to $2924.94 and that he would receive a pension for life of $227.94 twice a month. In November, 1970, Murkett was notified that his pension had been improperly

---

[2] The city applied the new accumulated sick leave pay exclusion policy to employees of several departments and not just to the firemen's unit.

computed (through inclusion of accumulated sick leave pay) and that the proper amount should be only $167 twice a month. The union filed a grievance on Murkett's behalf against the city for having made the change. The grievance was processed and culminated in arbitration before the state board of mediation and arbitration. That board made an award on March 15, 1973, which held that Murkett's pension benefits could not be disturbed, and ordered the city to reestablish and pay Murkett's benefits as originally determined. The mediation and arbitration board ruled that the pension vested upon retirement and that the city was not free to change it thereafter unilaterally. It also pointed out that Murkett's decision to retire had been made in reliance upon the amount he was told he would receive as a pension. The city complied with the terms of the award and also adjusted pensions of other retired firemen similarly affected.

The city continued, however, to compute pensions of persons who retired *after* August 26, 1970, without the inclusion of accumulated sick leave pay in the compensation for the final twelve months of service. The first fireman to retire after August 26, 1970, was Thomas LaRochelle, who retired on July 1, 1973. LaRochelle's accumulated sick leave pay was not included in computing his pension benefits. The present action before the board arose as a result of that exclusion.

After a hearing, the board concluded that the method of pension benefit computation was a matter of long-standing practice whether required by the terms of the contract or not, that any substantial change in that method of computation was a mandatory subject of bargaining with a statutory

bargaining representative, and that a unilateral change in the method constituted a refusal to bargain and a violation of § 7-470 (a) (4), even though done in good faith and without an intent to injure or discourage the union.

On appeal from the final order of an administrative agency, such as the board, the trial court does not try the case de novo. It is not the function of the court to adjudicate the facts. The court can do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings were supported, as the statute requires, by substantial evidence. General Statutes § 31-109 (b). If the findings are supported by substantial evidence, they cannot be disturbed. *L. Suzio Construction Co.* v. *Connecticut State Board of Labor Relations,* 148 Conn. 135, 138, 168 A.2d 553; *Imperial Laundry, Inc.* v. *Connecticut State Board of Labor Relations,* 142 Conn. 457, 461, 115 A.2d 439. The court, however, has the function of reviewing the record of the entire proceedings before the board to determine whether the board acted arbitrarily, unreasonably, or contrary to law. *Hotchkiss Grove Assn., Inc.* v. *Water Resources Commission,* 161 Conn. 50, 56, 282 A.2d 890.

In considering the appeal, the trial court, while adhering to all of the facts found by the board, determined that the board's conclusions were not correct. It reasoned that, although the action of the city taken on August 26, 1970, was a unilateral one, there was no violation by the city since the union had reasonable notice of the employer's decision and a reasonable opportunity for it to have raised the issue at the bargaining table. On that basis the appeal was sustained and the award was set aside.

Because Connecticut's Labor Relations Act and Municipal Labor Relations Act are essentially patterned on the National Labor Relations Act, this court has long held that the judicial interpretation of the National Labor Relations Act is persuasive and helpful in the interpretation of the Connecticut statutes. *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 579, 295 A.2d 526.

The United States Supreme Court recognized that not all unilateral action taken by an employer necessarily requires a finding of a violation of § 8 (a) (5) of the National Labor Relations Act since circumstances of the individual case might excuse or justify the taking of such action. *National Labor Relations Board* v. *Katz,* 369 U.S. 736, 747–48, 82 S. Ct. 1107, 8 L. Ed. 2d 230. That principle was reiterated by the Circuit Court of Appeals in *National Labor Relations Board* v. *Cone Mills Corporation,* 373 F.2d 595 (4th Cir.) when it stated (pp. 599-600): "We do not think *Katz* leaves us free to disregard the 'record as a whole' in reviewing the question of whether or not unilateral action amounts to a refusal to bargain. See *Universal Camera Corporation* v. *National Labor Relations Board,* 340 U.S. 474, 71 S. Ct. 456, 95 L. Ed. 456 . . . . We think it more accurate to say that unilateral action may be sufficient, standing alone, to support a finding of refusal to bargain, but that it does not compel such a finding in disregard of the record as a whole. Usually unilateral action is an unfair labor practice — but not always." That court also stated (p. 599): "It seems to us that the predominant factor is not whether the subject was 'under negotiation,' nor even whether general negotiations are then being conducted, but whether in the light of all of the circumstances there existed reasonable

opportunity for the Union to have bargained on the question before unilateral action was taken by the employer. Notice is important only as it bears upon whether there actually was such opportunity. Common law conceptions of notice, including formality and specificity, are no more helpful in this area than are traditional contract notions." To determine the question of good faith the totality of the party's conduct throughout the negotiations must be considered. *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 591–92, 295 A.2d 526; see *National Labor Relations Board* v. *Alva Allen Industries, Inc.,* 369 F.2d 310, 321 (8th Cir.); *New Canaan* v. *Connecticut State Board of Labor Relations,* 160 Conn. 285, 293, 278 A.2d 761.

As already noted, from on or about August 26, 1970, the city unilaterally decided to terminate its practice of granting its employees certain pension benefit rights. The union became aware of that withdrawal and decided to seek relief through the state board of mediation and arbitration. Although that avenue of relief did not preclude the union from taking other appropriate action, the union refrained from doing so. The arbitration award which it sought and obtained, however, was limited to the propriety of the city's exclusionary policy as applied to a particular employee, Murkett, who retired in reliance on the employer's past practice. The award in no way prevented the city from continuing to extend its new policy to persons retiring after August 26, 1970. Moreover, at no time did the city indicate that it had or would alter its position with regard to active employees. Except for the action brought to the mediation and arbitration board on behalf of Murkett, the union took no legal or other action to obtain any change of the city's

position. That acquiescence continued from November, 1970, up to the signing of a new contract on December 17, 1970.[3] The union, therefore, had had notice of the city's abandonment of its past practice for some time when, on December 17, 1970, it signed a new contract for the period of July 1, 1970, to June 30, 1973.[4]

To summarize, the city on advice of counsel decided to withdraw certain benefits from its employees as being improper. That decision was made in good faith, was not made to discourage union activity, and was based upon a reasonable and bona fide legal opinion on the issue. The union became aware of the city's decision and chose to attack it by way of arbitration. The arbitration award required the city to include accumulated sick pay in the computation of pension benefits but only as applied to an employee who had retired prior to August 26, 1970. Although the city complied in every respect with that award, it gave no indication to the union that it would reinstate the past practice with respect to employees who would retire after August 26, 1970. The union made no other attempt to discuss the pension issue during talks which subsequently led to a new contract agreement. Approximately two-and-a-half years after the city's decision to make the unilateral change, the union, without itself having ever brought

[3] Counsel for the defendant in his brief admitted that "[i]t is true there was evidence that the union became 'aware' of the opinion sometime in November of 1970 when the city changed the pension benefit of Murkett."

[4] The defendant argues that it cannot be assumed that a reasonable opportunity to negotiate exists up until the actual day of signing a contract. We hold, however, that such a reasonable opportunity did exist when the defendant learned of the change in policy at some time in November, and the new contract was not signed until mid-December.

up the matter in negotiations, filed the present complaint with the board when the city applied the new formula to LaRochelle.

It thus appears that the pension issue involved here never arose at the bargaining table because the union chose not to raise it either as a negotiating tactic or through the misconception that it had been resolved elsewhere.[5] It was not because the city had refused to discuss it or because the city had given no notice of it, or that there was no opportunity for it to be raised during negotiations.

"A union cannot charge an employer with refusal to negotiate when it has made no attempts to bring the employer to the bargaining table. *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.*, 306 U.S. 292, 59 S. Ct. 501, 83 L. Ed. 660 (1939); *National Labor Relations Board* v. *Rural Electric Company, Inc.*, 296 F.2d 523 (10 Cir. 1961). Nor is a union in a good position to charge an employer with bargaining in bad faith when the union itself has exhibited little, if any, real desire to reach a bona fide contract benefitting the members of the bargaining unit which it, by law, is required to represent." *National Labor Relations Board* v. *Alva Allen Industries, Inc.*, 369 F.2d 310, 321 (8th Cir.).

---

[5] John Moore (for the union): "We didn't take that city attorney's ruling too seriously, because we then went and said that that ruling has no meaning for us, because we have it in the contract, and we prevailed.

Patrick F. Bosse (chairman, Connecticut state board of labor relations): Prevailing, you mean the Murkett decision?

Moore: The Murkett decision. We then come to the point, there was no reason to take a [prohibited] practice on the matter in that we were immediately paid. There was a grievance. We prevailed. That was it. Nothing happened then, to our knowledge, till LaRochelle came."

While the city's initial decision to modify the method of pension computation was a unilateral one, its actions must be viewed in the totality of the circumstances in which that decision was made and implemented. The union in this case knew that a problem would inevitably develop over the pension issue in the administration of the labor contract it had signed. The union did not, however, choose to discuss the disputed issue with the city at the bargaining table in a setting where bargaining power is roughly equal.[6] A purpose of our labor laws is to create a climate wherein the parties find it mutually advantageous to resolve problems through discussion and negotiation. The burden is on the complaining party to establish facts demonstrating that the other side has committed a prohibited practice by refusing to bargain in good faith.

In view of the totality of the circumstances of this case, the conclusion of the trial court that the union had reasonable notice and opportunity to negotiate with the city over the pension issue and that therefore it was not a prohibited practice for the city not to have brought it up at the bargaining table cannot be disturbed.

There is no error.

In this opinion HOUSE, C. J., LOISELLE and SPEZIALE, Js., concurred.

---

[6] In its findings of fact, the labor relations board found that negotiations between the parties for a successor agreement to the contract expiring June 30, 1973, had begun before the Murkett award of the mediation and arbitration board on March 15, 1973, and were, in fact, continuing at the time of the hearing by the labor relations board. The board further found that neither party had proposed to negotiate the method of computing pension benefits at any time during that period of negotiations.

LONGO, J. (dissenting). I cannot agree with the majority opinion because I do not see any satisfactory basis in the record on which the trial court or this court can base the conclusion that a reasonable opportunity for the union to bring the dispute to collective bargaining existed before December, 1970. The majority holds as a matter of law that such an opportunity existed between some uncertain date in November, 1970, when the union learned of the change in policy, and mid-December, when the new contract was signed. It appears that by so holding the majority is finding facts to support its conclusion. I believe that the proper disposition of this case would be to remand it to the Connecticut state board of labor relations for findings of fact on the issue of whether the defendants had a reasonable opportunity to raise the plaintiff's change in policy at the negotiating table.