RICHARD C. O'BRIEN *v.* STATE BOARD
OF LABOR RELATIONS
(3948)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued March 11—decision released July 1, 1986

*Thomas W. Bucci,* for the appellant (plaintiff).
*Joseph M. Celentano,* for the appellee (defendant).

DUPONT, C. J. In this appeal, the plaintiff claims that the trial court erred in affirming the decision of the state board of labor relations (board), which determined

that the plaintiff's discharge from his employment as assessment investigator II for the town of Greenwich did not constitute a violation of General Statutes § 7-470 (a).

The plaintiff's supervisor was Al Kirk, the tax assessor for the town. Also employed in the office was George Rich as assessment investigator I. The events leading up to the plaintiff's termination involved a one-half page memorandum which he sent to Kirk stating that the field inspections, for which the plaintiff and Rich were responsible, were running behind schedule as compared to prior years. The plaintiff stated that, in his opinion, the inspections were too numerous to be completed on time and, accordingly, he requested that Kirk seek additional help to alleviate the problem. This was during a period of time, however, when, due to recent changes in the local tax laws and internal office procedures, the total workload of the office was decreasing.

Kirk responded to the plaintiff by stating that he had surveyed other assessors as to the number of total inspections conducted by their offices under comparable circumstances. On the basis of this information, Kirk concluded that the number of inspections required from Rich and the plaintiff was reasonable and, as a result, that there should not be any difficulty in completing the required inspections on time. Kirk concluded by stating that if the plaintiff were unable to meet those requirements, Kirk would be forced to examine alternative options in order to meet his office's workload. The plaintiff did not respond to this memorandum.

After sending the memorandum to the plaintiff, Kirk contacted a private firm to discuss the possibility of the firm's taking over the services which were being performed by the plaintiff and Rich. On the basis of these discussions, Kirk determined that a change to a pri-

vate firm would result in a considerable savings to the town. Kirk subsequently informed the town's labor contract officer and assistant personnel director that he was considering meeting the office's workload through the use of a private firm.

Subsequently, Kirk proposed reorganizing the tax assessor's office by eliminating the positions held by the plaintiff and Rich and substituting a private assessment firm, which would result in a savings of approximately $28,000 to the town.[1] The Greenwich Municipal Employees Association (union) was notified of the proposal on the same day. Kirk thereafter informed the plaintiff and Rich that their positions in the office would be terminated. The reason given by Kirk for this decision was "a significant reduction in the assessing workload of the office which has compelled a reorganization of the office." The town and the union reached a partial agreement regarding the two positions in the tax assessor's office. Under the terms of the settlement, Rich's position would not be eliminated until July 2, 1982, so that Rich could qualify for retirement benefits. As for the position held by the plaintiff, the parties stipulated that they were unable to reach an agreement on the issue.

The union's amended complaint filed with the board alleged that the plaintiff's written communication to Kirk resulted in the contracting of assessment work to a private firm and the termination of the plaintiff's employment in violation of General Statutes § 7-740 (a) (1) and (3). After a hearing, the board dismissed the plaintiff's complaint. In its decision, the board found that the union did not meet its burden of proving that the plaintiff's termination was in retaliation for engaging in protected activity. The board con-

---

[1] The private firm could do the work for $24,000. The combined salaries of the plaintiff and Rich were $52,000 per year.

cluded that the action was prompted by the town's legitimate desire to perform the work of the tax assessor's office in a more efficient manner and at a lower cost. The plaintiff subsequently sought judicial review of the board's decision pursuant to General Statutes § 31-109 (d). The trial court affirmed the decision of the board and judgment was rendered dismissing the appeal. The plaintiff then filed this appeal.

The plaintiff argues that, under General Statutes § 7-468,[2] he possessed the right to complain to his employer regarding his workload and that he was improperly discharged for exercising that right. The plaintiff states that, under General Statutes § 7-470 (a),[3] a municipal employer is prohibited from interfering with an employee's exercise of his rights under General Statutes § 7-468. The plaintiff alleges that his memorandum to Kirk constituted a grievance under § 7-468 (d)[4] regarding his workload and that his subsequent termination, which he claims was due to his presentation of the purported grievance, violated § 7-470 (a).

---

[2] General Statutes § 7-468 (a) provides: "Employees shall have, and shall be protected in the exercise of, the right of self-organization, to form, join or assist any employee organization, to bargain collectively through representatives of their own choosing on questions of wages, hours and other conditions of employment and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from actual interference, restraint or coercion."

[3] General Statutes § 7-470 (a) provides in pertinent part: "Municipal employers or their representatives or agents are prohibited from: (1) Interfering, restraining or coercing employees in the exercise of the rights guaranteed in section 7-468 . . . ."

[4] General Statutes § 7-468 (d) provides: "An individual employee at any time may present a grievance to his employer and have the grievance adjusted, without intervention of an employee organization, provided the adjustment shall not be inconsistent with the terms of a collective bargaining agreement then in effect. The employee organization certified or recognized as the exclusive representative shall be given prompt notice of the adjustment."

"On appeal from the final order of an administrative agency, such as the board, the trial court does not try the case de novo. It is not the function of the court to adjudicate the facts. The court can do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings were supported, as the statute requires, by substantial evidence. General Statutes § 31-109 (b)." *Norwich* v. *Norwich Fire Fighters,* 173 Conn. 210, 214, 377 A.2d 290 (1977). If the findings are supported by substantial evidence, they cannot be disturbed. See *L. Suzio Construction Co.* v. *State Board of Labor Relations,* 148 Conn. 135, 138, 168 A.2d 553 (1961). The court, however, is required to review the record of the entire proceedings before the board in order to determine whether the board acted arbitrarily, unreasonably, or contrary to law. See *Norwich* v. *Norwich Fire Fighters,* supra.

The issue in this case is whether there was substantial evidence for the board to conclude reasonably that the plaintiff did not lose his employment with the town because of his exercise of a right granted by statute or by a collective bargaining agreement. The defendant argues that the plaintiff's memorandum was not a grievance and that the board correctly concluded that the plaintiff's termination resulted from a determination that the efficient running of the tax assessor's office at the most economical cost required the elimination of the position. The trial court, in stating that if the termination were due to the receipt of the writing, an unfair labor practice would have occurred, in effect, concluded that the letter was a grievance. It held, however, that the board had substantial evidence to conclude that the memorandum was not the cause of the termination. For the purposes of this opinion, we assume that the memorandum was a grievance.

The reason for termination of employment presents a factual issue and whether the termination resulted from the exercise of a protected right of an employee or because of reasons unrelated to that right depends upon the subsidiary facts of each case. *Winchester* v. *State Board of Labor Relations,* 175 Conn. 349, 366, 402 A.2d 332 (1978).

The plaintiff relies on *National Labor Relations Board* v. *City Disposal Systems, Inc.,* 465 U.S. 822, 104 S. Ct. 1505, 79 L. Ed. 2d 839 (1984), to support his position. That case, however, does not deal with whether substantial evidence existed to support the conclusion of a board. It held that an individual employee's assertion of a right granted under a collective bargaining agreement is recognizable as concerted activity, and that the assertion need not refer to the agreement, nor need it be a formal grievance. If we assume, as we do, that the plaintiff's memorandum to Kirk was the assertion of his right to engage in protected activity, the question then becomes whether there was substantial evidence for the board to conclude that the elimination of his job occurred because of the town's legitimate desire for efficiency rather than in retaliation for his exercise of a protected right.

A review of the evidence presented in this case indicates that the board's conclusion was supported by substantial evidence and that the plaintiff failed to demonstrate that his discharge was in retaliation for engaging in protected activity. Here, the board was presented with evidence that the reorganization of the tax assessor's office was motivated by the town's legitimate business goal of completing the workload of the office in a timely fashion and at a lower cost. The plaintiff would have this court ignore the evidence concerning the failure by the plaintiff and Rich to perform the decreasing number of inspections in a timely fashion,

along with the evidence that a private firm could, and ultimately did, perform the same job on time and at a lower cost.

There is no error.

In this opinion the other judges concurred.