[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 15954
The plaintiff Union appeals the decision of the defendant Connecticut State Board of Labor Relations dismissing its complaint against the City of Milford alleging a prohibited labor practice. Connecticut General Statutes § 7-469 mandates that municipal employers and municipal employees' unions have the duty to bargain collectively. Section 7-470
specifically provides that municipal employers are prohibited from "(4) refusing to bargain collectively and in good faith with an employee organization. The Union alleged in its complaint that the City of Milford violated these statutes by unilaterally, and without negotiations and consent of the Union, ordered on-duty fire fighters to mandatory training at the City of New Haven fire department training facility in New Haven.[1]
The Union's complaint came before the Labor Board for a hearing on April 1, 1999. Both parties presented evidence and cross examined each other's witnesses; both parties also filed post-hearing briefs. The Board determined that the Union failed to establish both allegations of unfair labor practice and dismissed the complaint. This appeal followed.
The facts are as follows: The Union is an employee organization and the City is a municipal employer within the meaning of § 7-467. The Union and the City were parties to a collective bargaining agreement that contained the following relevant provision:
Article VI. Manpower.
 B.3 Whenever the manpower on duty on any platoon shall fall below twenty-three (23) employees, such shortage shall be covered by overtime work in accordance with the provisions of Article IX.
The parties agree this provision establishes twenty-three as a minimum number of fire fighters on duty at any given time in the city. If the number of on-duty firefighters drop below twenty-three, the city will CT Page 15955 "hire back" replacement firefighters on overtime until the minimum number has been re-established.
The on-duty firefighters are assigned throughout the city's five fire stations, typically in six engine companies of three firefighters each, one ladder truck with two fire fighters, one rescue truck with two firefighters, and a supervisor. The "first due" response to a fire alarm consists of three engine companies, a ladder company, a rescue company and a battalion chief, for a total of thirteen firefighters plus one supervisor, while the remaining firefighters wait to be called as "second due" if necessary.
In June and July of 1997, the fire chief ordered approximately ten firefighters plus higher ranking officers to attend training sessions at the New Haven fire academy, five miles from the City of Milford line. During each of the training periods in New Haven, the chief hired back an extra engine and positioned it outside of the training facility so that in the event of an emergency in Milford three firefighters could leave immediately. He also hired an additional rescue company so that the "first due" response was maintained at all times in the city while the training was being conducted in New Haven.
All the parties herein recognize the authority of Labor Board decisional law to the effect that the employer has the obligation to bargain regarding changes in work rules that affect the safety of the employees. Town of Wallingford, Labor Board Decision No. 3658 (1999), at p. 5, states:
 Employee safety is a major term or condition of employment and the mandatory subject for collective bargaining. Even though the change in a condition effecting safety may be within the scope of managerial discretion and therefore not a mandatory subject of bargaining, an employer is under an obligation to bargain over the secondary effect of that managerial decision when it has a substantial impact on safety conditions.
Town of North Haven, Labor Decision No. 3143 (October 12, 1993), at p. 5, states:
 Where a reduction in the number of employees to be utilized or assigned will result in a substantial change in the safety conditions of the remaining personnel, an employer has a duty, prior to making the change, to bargain with the representative union CT Page 15956 concerning those safety implications.
Thus, the precise issue before the Board was whether or not the chief ordering the ten Milford firefighters to attend the fire training academy in New Haven so substantially affected the level of safety of the remaining firefighters that a duty to negotiate was triggered.
In its brief the Union argues that "reducing the City of Milford staffing by sending ten-eleven on-duty firefighters to a training facility five to twelve and one-half miles away with corresponding travel times of seven to nineteen minutes . . . creates a "substantially less safe' condition for the remaining staff."
The Board, however, noted the following evidence in the record: (1) The City has long maintained a training program for firefighters from 10:00 a.m. to noon and from 1:00 p.m. to 3:00 p.m. on weekdays at various sites within the city limits. The training is conducted while the firefighters are on-duty and the city does not replace those firefighters engaged in the training. (2) The city has a long standing practice of sending on-duty firefighters outside of the city to assist other fire departments, for physical exams, and checking on absent firefighters without the city automatically replacing the firefighters to maintain minimum manning. (3) The chief positioned an extra engine at the training site in New Haven and hired an additional rescue company in Milford so that the "first due" response was always maintained in the city while the "second due" firefighters attended the training. (4) The Union claimed that the "second due" firefighters got too tired during the live burn training exercise in New Haven, but the Board found no indications that the training in New Haven was any more strenuous than any other training. (5) As to evidence regarding traffic congestion on I-95 and the amount of time it might take during rush hour to travel from the New Haven training facility to the various stations within Milford, estimated at from six minutes to nineteen minutes, the Union did not produce comparative evidence to show the average response time in Milford. As a consequence, the Board concluded "that the existing safety levels of the members of this bargaining unit have not been altered by the training exercises in New Haven."
The issue of the affect of training exercise in New Haven upon the safety level of the remaining firefighters in Milford is clearly one of fact. The Uniform Administrative Procedures Act § 4-183(j) provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." This court can do no more on factual questions presented on appeal of a final order of an administrative agency than to examine the record to determine whether the findings are supported by substantial evidence. City of Norwich v.CT Page 15957Norwich Firefighters, 173 Conn. 210, 214 (1977).
Here, the court does determine that the Board's finding of fact that the training exercises in New Haven do not affect the safety level of the remaining firefighters is supported by substantial evidence. "An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which a fact in issue can be reasonably inferred." Dolgner v. Alander, 237 Conn. 272, 281 (1996). The plaintiff had the burden of proving that the Board's decision was not supported by substantial evidence and it failed in that burden.
As a consequence, this appeal is dismissed.
Robert Satter Judge Trial Referee