******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# APPENDIX

## CITY OF SHELTON *v.* CONNECTICUT STATEBOARD OF LABOR RELATIONS ET AL.*

Superior Court, Judicial District of New Britain,
Administrative Appeals Session
File No. CV-20-6059611-S

Memorandum filed September 10, 2020

*Proceedings*

Memorandum of decision on plaintiff's appeal from decision by named defendant finding violation of Municipal Employees Relations Act. *Judgment for plaintiff.*

*Mark J. Sommaruga*, for the plaintiff.

*Harry B. Elliott, Jr.*, general counsel, for the defendant State Board of Labor Relations.

*Barbara J. Resnick*, for the defendant Shelton Police Union, Inc.

*Opinion*

CORDANI, J.

## INTRODUCTION

The City of Shelton (city) appeals a final decision of the Connecticut State Board of Labor Relations (board) finding that the city violated the Municipal Employees Relations Act, General Statutes § 7-467 et seq. (MERA), by changing its process for evaluating candidates for promotion within the city's workforce without negotiation with the Shelton Police Union (union).

## FACTS AND PROCEDURAL HISTORY

At all times relevant to this appeal, the city and the union had a long-standing collective bargaining relationship and had been parties to a collective bargaining agreement, the most recent version of which became effective on July 1, 2016 (CBA). The CBA § 17.01 provides:

"*Promotions will be made in accordance with the provisions of the Merit System of the City of Shelton.* Promotional opportunities will be posted with sufficient time to prepare for the examination and a list of study materials will be provided. Challenges to the promotional testing results shall be in accordance with Section 29.03A."[1] (Emphasis added.)

The merit system of the city is defined by city ordinance.[2] Prior to February 9, 2018,[3] the merit system of the city was provided for in Ordinance 896.[4] Ordinance 896 provided in pertinent part:

"All appointments to positions within the classified service of the City of Shelton shall be made as provided herein. *Examination and testing shall be established* in accordance with the job description *by the [A]dministrative [A]ssistant* who shall first determine whether an examination shall be open competitive or promotional. . . .

"The examination process shall be of a practical nature and shall relate to subjects which fairly measure the relative capabilities of the person examined to execute the duties and responsibilities of the position sought. The [A]dministrative [A]ssistant *may adopt or authorize* the use of any procedures as deemed appropriate to assure a selection of employees on the basis of merit and qualifications. . . .

"Examinations for positions within the classified service shall be competitive and *may include* written, practical and oral interview test components. All applicants meeting the prescribed requirements shall be allowed to participate in the initial test component and shall be notified, in writing, of the time, place and date of the initial test." (Emphasis added.) Shelton Code of Ordinances, c. 2, Art. VI, § 2-312 (a), (b), and (e).

On February 9, 2018, the city adopted a new ordinance (2018 Ordinance)[5] concerning the merit system with the goal of enhancing promotion from within the city's ranks, which new ordinance provided in pertinent part:

"Upon the recommendation of the Department Head that there are qualified employees presently employed by the City, including both full time and part time employees, who are qualified to perform the job that is opened, *the Administrative Assistant may, in his sole discretion, limit the applications to City employees and proceed with only a promotional examination*." (Emphasis added.) Shelton Code of Ordinances, c. 2, art. VI, § 2-301 (7.1.1).

It is the adoption and implementation of this 2018 Ordinance that the union challenged. The board factually found that "since on or before October, 1981, to February, 2018, the promotional process for bargaining unit members entailed participation by qualified candidates in written and oral examinations, each having a relative weight of fifty percent (50%) in determining each candidate's final score." (Footnote omitted.)

In April of 2018, it was determined that there was a need for additional lieutenants in the city's police department. In accordance with the 2018 Ordinance, the department head, [the] chief of police, notified the administrative assistant that several employees within the city's police department were qualified for the new positions. The administrative assistant then engaged the internal promotion process provided for in the 2018 Ordinance. Five internal candidates applied for the three available positions. All of the candidates who applied were subjected to oral examination, determined to be qualified and ranked. All five were placed on a certified list of eligible candidates. The police chief then selected three candidates from the list. No written examination was given in the process.

The union claimed that the adoption of the 2018 Ordinance and its implementation in the promotion of the three police lieutenants amounted to a unilateral change in the material conditions of employment by the city without the mandatory negotiation with the union. In particular, the union claimed that conducting the promotional process without a written examination was an improper unilateral change made without negotiation with the union. The city admits that it did not negotiate with the union over the adoption of the 2018 Ordinance or its implementation in the promotion of the lieutenants without a written examination. The union then filed a complaint with the board.

The matter was heard before the board on July 19, 2019. Testimony was taken and evidence entered into the record. On March 10, 2020, the board issued its final decision which concluded that the city violated MERA

by unilaterally changing the promotion process to eliminate the written examination portion of the process, thereby changing the mandatory equal weighting between written and oral exams. The city then appealed the board's final decision to this court.

The city is aggrieved because it has exhausted its administrative remedies and appeals a final adverse decision of the board finding that the city violated MERA and compelling the city to change its promotional process.

## STANDARD OF REVIEW

This appeal is brought pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-183.[6] Judicial review of an administrative decision in an appeal under the UAPA is limited. *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000). "[R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither [the Supreme Court] nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) Id.

Although the courts ordinarily afford deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes, "[c]ases that present pure questions of law . . . invoke a broader standard of review than is . . . involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 716, 6 A.3d 763 (2010).

## ANALYSIS

The board's final decision finds that the city violated MERA by removing the written examination from the promotional process without negotiation with the union. Specifically the board found that the fact that the promotional process contained a mandatory written examination[7] weighted at 50 percent of the candidate's overall score was a material term and condition of employment and could not be changed without negotiation with the union. Based upon the foregoing violation, the board ordered various remedies.

Pursuant to General Statutes § 7-474 (g), the merit system, once established, is not subject to mandatory negotiation, except for three particular topics specified in the statute, which statute provides in pertinent part:

"The conduct and the grading of merit examinations, the rating of candidates and the establishment of lists from such examinations and the initial appointments from such lists and any provision of any municipal charter concerning political activity of municipal employees shall not be subject to collective bargaining, provided once the procedures for the promotional process have been established by the municipality, any changes to the process proposed by the municipality concerning the following issues shall be subject to collective bargaining: (1) The necessary qualifications for taking a promotional examination; (2) the relative weight to be attached to each method of examination; and (3) the use and determination of monitors for written, oral and performance examinations. . . ."

Here the board found that the administration of a written examination was required by the merit system, and therefore by conducting the promotional process without a written examination, the city changed the relative weight to be attached to each method of examination without negotiation. However, as found by the court below, the city's merit system did not require a written examination, and accordingly, the city's choice to act in accordance with its merit system and not employ a written examination was not a change in the relative weight to be attached to each method of examination. Thus the exception in § 7-474 (g) was not engaged and no negotiation was required.

The court begins its analysis by examining what the CBA provided for concerning the city's merit system promotional process. The CBA § 17.01 provides: "Promotions will be made in accordance with the provisions of the Merit System of the City of Shelton."[8] The foregoing provision is subject to only two possible interpretations. First, the provision could mean that promotions will be made in accordance with the city's merit system as it existed at the time that the CBA was entered into, namely, July 1, 2016. In the alternative, the provision could mean that promotions will be made in accordance with the city's merit system as that system is amended from time to time.[9] The interpretation of contract language is a question of law for the court to resolve. See *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corp.*, 203 Conn. 123, 131, 523 A.2d 1266 (1987).

If the provision has the first meaning, namely, that the merit system authorized by the CBA is that system in effect on July 1, 2016, when the CBA was signed, then that merit system was reflected in Ordinance 896 which was publically adopted several months before the CBA was signed, and which provided that (i) the examination could be open competitive **or** promotional, (ii) the **administrative assistant may adopt** or authorize the use of **any procedures** as deemed appropriate to assure a selection of employees on the basis of merit and qualifications, and (iii) that examinations **may**

**include** written components. Thus, the city's merit system as it existed on July 1, 2016, did not absolutely require a written examination because the ordinance gave the administrative assistant power to adopt **any procedures** deemed appropriate and because the ordinance indicated that the process **may** contain a written component. A 1977 Ordinance provided: "Effective immediately *any* written and oral examinations *specified in the requirement sections* of all ordinances dealing with job descriptions will be weighed equally, 50% written and 50% oral."[10] (Emphasis added.) Shelton, Conn., Code of Ordinances, adopted March 14, 1977. This clearly meant that if the process included written and oral examinations, the two exams would be weighted equally. Accordingly, it is clear that the merit system that existed on July 1, 2016, did not absolutely require a written examination, but instead only required that if the process contained both oral and written components, they would be weighted equally. The administrative assistant was provided with the discretion to choose the appropriate procedure.

If the CBA provision authorizes any merit system that the city maintains as amended from time to time, then the merit system relevant to this case was as described in the 2018 Ordinance, and that merit system did not require a written exam. Similar to Ordinance 896, the 2018 Ordinance provided the administrative assistant with discretion to determine the proper procedure. Thus, in either case the CBA authorizes the use of a merit system which allows for but does not require a written examination and allows the administrative assistant to choose the appropriate procedure.[11]

The board factually found that, in practice, from October, 1981, through February, 2018, the city's merit system was actually conducted in such a manner that it included a written examination weighted at 50 percent. Such a long established practice of an important aspect of employment could amount to a material term and condition of employment and the board found that it did. A material term and condition of employment generally cannot be altered without negotiation with the union. Further, the board found that the weighting of the written and oral examinations at 50 percent each was a condition that required negotiation to change under . . . § 7-474 (g).[12] Thus, the board found that the provision of a written examination weighted at 50 percent within the merit system could not be changed without negotiation with the union. However, § 7-474 (g) only required negotiation *if* a change was made to the relative weight to be applied. Here no change was made because the merit system allowed a process without a written examination. Further, if the CBA covers this term and condition of employment, then the city and the union have already negotiated over the matter and arrived at a result that is memorialized in the CBA. A failure to negotiate over a term of employment cannot

be found where an express agreement between the parties that covers that term of employment is found in a collective bargaining agreement such as the CBA here. An employer does not have a duty to bargain over a term of employment that is covered by a provision of a collective bargaining agreement. See *Board of Education* v. *State Board of Labor Relations*, 299 Conn. 63, 74, 7 A.3d 371 (2010); see also *Norwich* v. *Norwich Fire Fighters*, 173 Conn. 210, 215–16, 377 A.2d 290 (1977). Collective bargaining agreements are the cornerstone of the relationship between the employer and labor. Collective bargaining agreements memorialize the bargaining that has occurred between the parties and establish each party's rights and obligations concerning the topics covered by the collective bargaining agreement. Thus, it is clear that the parties have the right and the obligation to conduct themselves in accordance with the terms of the collective bargaining agreement.

Clearly the CBA covers this matter. The CBA requires that promotions be made by the city in accordance with the city's merit system. As noted [previously], the merit system authorized by the CBA does, and did, not require a written examination within the process. Although the board factually found that, since 1981, the city utilized written examinations, on July 1, 2016, the union and the city negotiated and agreed that the merit system would be that system described in the city's ordinances.[13] Thus the union has had its negotiation concerning this term of employment and came to an agreement reflected in the CBA, and that agreement does not require a written examination.

The board found the city's reliance on the ordinances misplaced. The court respectfully disagrees. The CBA required the city to use its merit system. The merit system was defined by the ordinances. Thus the CBA, and therefore the union, agreed that the city should use its merit system as defined in the ordinances.

The board found that § 17.01 of the CBA must be read as a whole, and should be read consistent with § 29.03A. That may be so, but a corresponding reading does not change the court's interpretation of the CBA. Section 29.03A of the CBA refers to a written memorandum of understanding that is attached to the CBA. The memorandum of understanding establishes procedures to be followed to allow candidates to challenge results on written tests given for promotional purposes. Thus the memorandum of understanding allows for individual challenges to scores on written examinations, if such written examinations are administered. The memorandum of understanding does not change the meaning of the CBA and does not require the administration of written examinations. Section 29.03[A] is not meaningless, it merely provides procedures that may be used in applicable circumstances.

The past practice of the city in using written examina-

tions is entirely consistent with the CBA and the ordinances. Both the CBA and the ordinances allow for written examinations but do not require them. Reading the CBA as the union and the board do, results in a meaning that invalidates or undermines the plain meaning of the ordinances which were in existence when the CBA was signed. Since the CBA clearly uses the ordinances to define the merit system,[14] a reasonable reading of the CBA must be consistent with and not undermine the ordinances. Further, reading the CBA to allow but not require written examinations produces an interpretation that is consistent with the plain words of the CBA, including the attached memorandum of understanding, past practice, and the ordinances.

The union in this instance has not waived its right to negotiation,[15] it has had its negotiation when it agreed to the CBA, and the CBA does not mandate written examinations be part of the merit system. Accordingly, in passing the 2018 Ordinance, and in implementing the 2018 Ordinance in the promotion of the lieutenants, the city has not deprived the union of negotiation concerning this topic and has not violated MERA.[16]

Accordingly, the court determines that the plaintiff has established on appeal that the final decision of the board is (1) affected by error of law, and (2) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. The court therefore respectfully sustains the appeal.

### ORDER

The appeal is sustained. Judgment enters for the plaintiff. The city of Shelton has not, on the record before the court, violated MERA. Accordingly, the judgment and orders of the board are vacated.

* Affirmed. 210 Conn. App. 390,     A.3d     (2022).

[1] Section 29.03A refers to a September 18, 2003 memorandum of understanding which is attached to the CBA and provides procedures to be followed to allow candidates to challenge results on written tests given for promotional purposes.

[2] Although the CBA uses "Merit System" in capital letters, it does not define the term. The only place in the record where the merit system is defined in written documents is in the city ordinances. The city ordinances, in particular Ordinance 896, provide a definition of the merit system, explaining in detail how the system is applied and how it operates. See Record Exhibit 17, pages 248–66 for Ordinance 896 entitled "Merit System and Personnel Rules." See also Record page 296 for a history of amendments to these merit system ordinances from 1985 through 2016. As required, these ordinances are adopted through the normal legislative process of the city which process is open to the public.

[3] The foregoing Ordinance is entitled "Merit System and Personnel Rules" and is found in the Record at Exhibit 17, pages 248–66. The city's ordinances concerning the merit system have been amended by the city on a multitude of occasions over the years, but the details of the changes are not specifically reflected in the record. See Record page 296 for a history of amendments to these merit system ordinances from 1985 through 2016.

[4] A 1977 ordinance provided: "Effective immediately *any* written and oral examinations *specified in the requirement sections* of all ordinances dealing with job descriptions will be weighed equally, 50% written and 50% oral." (Emphasis added.) Shelton, Conn., Code of Ordinances.

[5] See Record Exhibit 18, pages 267–352. Again, this ordinance, which amends the previous merit system ordinances, defines the merit system and

provides significant details concerning the applicability and operation of the merit system.

[6] General Statutes § 4-183 (j) provides in relevant part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. . . ."

[7] The board's decision thus depends upon its finding that the city's merit system absolutely required a written examination, and therefore proceeding without a written examination changed the relative weight to be attached to each method of examination.

[8] The CBA further provides for a process of challenging the test results, however it is clear that this challenge process is directed to case-by–case challenges of individual candidates. Thus, if a particular candidate believes that there was a mistake in scoring, that candidate may challenge the particular score(s) through the specified challenge process. Thus, this challenge process adds nothing to the analysis of the issues before us.

[9] The board factually found that the merit system had been amended by the city on a multitude of occasions over the years, but that the record does not reflect the details of all changes to the merit system by city ordinances.

[10] Thus, this 1977 ordinance refers to "*any* written and oral examinations" "*specified in the requirement sections* of all ordinances." (Emphasis added.) Clearly this ordinance does not specify that a written examination is required. Instead, it indicates that, if a written examination is administered, it will be weighted equally with the oral examination.

[11] Given the multitude of changes to the merit system over the years made by city ordinances, the court finds that the meaning of this CBA provision is that the city is authorized and required to use the city's merit system as that system is defined and modified by city ordinance from time to time, with the potential exception for negotiation required by § 7-474 (g) if changes are made that fit within the statutory exceptions. However, since no change was made to the relative weighting of examinations, no negotiation was required here. The court notes that the CBA defers to the city ordinances to define the merit system and does not prohibit the city from changing the merit system. This also makes sense since the merit system is used citywide across many unions and collective bargaining agreements. Further the various union's interests here are to ensure that promotions are provided in an evenhanded, fair and rational way. This interpretation is also consistent with § 7-474 (g), which exempts the merit based promotional process from mandatory negotiation except for the specific topics specified in the statute. However, regardless of which interpretation of this CBA provision is applied, the provision does not require the use of written examinations, thus no change was made in that regard.

[12] General Statutes § 7-474 (g) provides, inter alia, that the merit based promotional process is exempt from mandatory negotiation with a union except that changing the relative weight to be attached to methods of examination shall be subject to negotiation.

[13] As noted [previously], regardless of the interpretation of this provision, the merit system as described by the ordinances did not require a written examination, whether we look to Ordinance 896, which was in effect when the CBA was signed, or the 2018 ordinance. Neither ordinance required a written examination.

[14] The CBA does not itself explicitly define or describe the city's merit system in any detail. The city defined its merit system through city ordinances.

[15] However, even if we look at waiver, the union signed the CBA referencing the city's merit system while knowing that Ordinance 896 had been enacted months before defining and explaining the city's merit system as a system that "may" include, but does not require, a written examination, and authorizing the administrative assistant to utilize any procedures deemed appropriate by the administrative assistant. This ordinance was adopted through the

normal public legislative process, and the union either was aware of it or should have been. The union chose to adopt the CBA requiring the city to use its merit system without further definition or limit in the CBA. If the union was dissatisfied with Ordinance 896, it should have objected when the ordinance was enacted or dealt with the matter in the CBA. The city now is merely acting in accordance with its agreement.

[16] The board found that the CBA language did not reflect a mutual intent to authorize elimination of the written exam. However, the CBA is absolutely clear in requiring the city to use its merit system in evaluating promotions. The city's merit system, whether the system in place at the time that the last CBA was signed or the system as established from time to time by city ordinance, does not require a written examination. Thus, there was nothing to waive. Conduct in accordance with the CBA effective at the time does not require a waiver because the city had the right and the obligation to conduct itself in accordance with the CBA. Although the city did use a written examination for some time, the system that it was operating under allowed for but did not require the use of a written examination. Further the CBA signed in 2016, and applicable to all relevant periods here, specifies and confirms that the city is to use its merit system. This is exactly what the city did.

––––––––––––––––––––––––––––