CITY OF NEW HAVEN ET AL. *v.* CONNECTICUT STATE BOARD OF LABOR RELATIONS

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 170612
NEW HAVEN

Memorandum filed October 5, 1979

*Frederick W. Danforth, Jr.,* for the plaintiffs.

*William S. Zeman* and *William R. Darcy,* for the defendant.

BERDON, J. This is an appeal by the city of New Haven and the New Haven board of education (both hereinafter referred to as the municipal employer) from a decision and orders of the Connecticut state board of labor relations (the labor board). Four labor unions (unions) which represent some of the employees of the municipal employer had filed complaints[1] with the labor board, alleging that the municipal employer had unilaterally and without good faith bargaining enacted an amended residency ordinance requiring its prospective employees and those employees transferred in the future to positions outside their bargaining units to become residents of the city of New Haven. The labor board held that the municipal employer, by adopting the ordinance without first bargaining in good faith with the unions, violated § 7-470 of the General Statutes, part of the municipal employee relations act.

The labor board found the following facts which are not disputed. Since February 24, 1966, the municipal employer has by ordinance required its employees to live within the greater New Haven area, which is defined as New Haven and those six towns and cities which are contiguous to New Haven. On March 15, 1976, a petition was filed to amend the residency ordinance to require employees to reside within the city. A public hearing was held on the proposed amendment at which time the unions argued against it, claiming that its adoption would be in violation of state labor laws. The issue

[1] Locals 287, 713, 884 and 1303 of Council No. 4, American Federation of State, County and Municipal Employees, AFL-CIO, which union locals represent employees of various departments and boards of the city of New Haven, filed the complaints with the Connecticut state board of labor relations; those four complaints were consolidated.

of whether the residency requirement was a manda-
tory subject for good faith bargaining was clearly
raised at the public hearing.[2]

The union heard nothing further on the proposed
amendment until April 21, 1977, when a revised
draft was again submitted. On November 15, 1977,
the legislation committee submitted the majority
and minority reports on the issue to the board of
aldermen. On November 29, 1977, an informal hear-
ing was held on the revised proposal and the unions
again protested its adoption. On December 5, 1977,
the board of aldermen enacted, and on December 19,
1977 the mayor approved, the amendment to the
residency ordinance which became effective Jan-
uary 1, 1978. The pertinent parts of the amendment
to the residency ordinance provided that "as a con-
dition for employment" all persons employed after
January 1, 1978 must become residents within six
months of employment, and that those who were
employed before January 1, 1978 and who are
appointed, transferred or promoted outside their
bargaining units must comply with the ordinance in
the same manner as those who were hired after
January 1, 1978.[3]

---

[2] In the present case, the labor board found the following: "At
the public hearing attended by over a hundred people, the Chairman
in his introductory comments asked those testifying to comment on
whether or not 'a residency ordinance does, in fact, constitute a
mandatory subject of collective bargaining,' stating 'I believe this
is one of the key issues that face the Committee.' The Union rep-
resentatives in attendance stated residency is a mandatory subject
of bargaining. The City's Corporation Counsel while noting that
'most collective bargaining acts require any change in conditions of
employment to be bargained and not to be unilaterally imposed upon
the bargaining unit,' stated that in his opinion a residency require-
ment prospective in nature and applicable to new employees would
not have to be bargained."

[3] The pertinent parts of "Ordinance Amendments de Residency
Requirements" amending § 2-74 of the ordinance code of the city of
New Haven are as follows:

"(c) RESIDENCE REQUIREMENT FOR NEW EMPLOYEES. Any person
who becomes a municipal employee on or after January 1, 1978,

At no time while the amendment to the residency ordinance was in the legislative process, including that period of time during which the parties negotiated new collective bargaining agreements,[4] did the unions or the municipal employer ever request to bargain as to the change in residency requirements. In the current collective bargaining agreements, there is no residency requirement.

The labor board concluded the following: that requiring those employed after January 1, 1978 and those employed before January 1, 1978 who are permanently appointed, transferred or promoted into a bargaining unit to establish residence in the city within six months thereafter is a condition of employment and therefore a mandatory subject of collective bargaining; that the unilateral change of such a condition of employment without collective bargaining is a practice prohibited by § 7-470 of the General Statutes; and that the failure of the unions to request bargaining on the residency requirement while the mater was in the legislative process did not constitute a waiver of their statu-

---

shall be required to maintain his or her residence in the City of New Haven as a condition for employment whether or not such municipal employee holds a bargaining unit position as defined herein.

. . . . .

"(h) EMPLOYMENT CHANGE OF BARGAINING UNIT EMPLOYEES. In the event that any municipal employee hired before January 1, 1978, who holds a bargaining unit position, shall be appointed, transferred or promoted on or after January 1, 1978, to any salaried position with the municipal government of the City of New Haven outside of such employee's bargaining unit, the municipal employee so appointed, transferred or promoted outside of his or her bargaining unit shall, for the purposes of this ordinance, be deemed a new municipal employee hired on or after January 1, 1978 and shall thereafter be required to maintain his or her residence in the City of New Haven in accordance with subsections (c), (d) and (e) of this ordinance."

[4] The unions and the municipal employer carried on negotiations for new collective bargaining agreements between March 29, 1976 and November 16, 1976.

tory right to bargain over the subject in good faith.[5] Pursuant to the jurisdiction conferred upon it under § 7-471 of the General Statutes, the labor board issued appropriate remedial orders.[6]

## I

### Issues

The municipal employer in this administrative appeal raises two issues, to wit: whether the residency requirement for new and transferred employees was a condition of employment and therefore a mandatory subject of collective bargaining; and if it was, whether the unions, by failing to demand that the municipal employer bargain on the issue during the twenty-one months it took to adopt the ordinance, waived their right to have the municipal employer bargain in good faith with them over the subject.

---

[5] The labor board also concluded that requiring those employed before January 1, 1978 who are permanently appointed, transferred or promoted out of a bargaining unit to establish residence within the city is *not* a mandatory subject of bargaining. The board reasoned that the collective bargaining agents have no legitimate interest in the working conditions of employees who have been removed to a unit not represented by them. See *Allied Chemical & Alkali Workers* v. *Pittsburgh Plate Glass*, 404 U.S. 157, 173–74.

[6] The labor board ordered the municipal employer to cease and desist from refusing to negotiate with the unions over the amended residency requirements contained in the ordinance adopted on December 19, 1977, as it applied to new employees and to employees appointed, transferred or promoted into a bargaining unit represented by the unions, "unless and until either (1) such residency requirement shall have been negotiated with the Unions, or (2) there has been a final impasse in said negotiations." It was also ordered that the municipal employer take other remedial action pertaining to the amended ordinance and its failure to bargain in good faith over the subject matter, including enforcement of the amended ordinance. "[A] local ordinance, charter provision, or regulation cannot impose any limitation upon the scope of bargaining between public employers and their employees as defined by a statewide bargaining statute." Annot., 84 A.L.R.3d 242, 265.

## II

### JURISDICTION

In deciding this administrative appeal, the limit of the court's jurisdiction is set by statute. The Uniform Administrative Procedure Act; General Statutes §§ 4-166 et seq.;[7] provides in part for the following: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." General Statutes § 4-183 (g). If the labor board's findings are supported by substantial evidence,[8] they cannot be disturbed. *Madow* v. *Muzio*, 176 Conn. 374, 376.

---

[7] Although this appeal was taken pursuant to § 31-109 (d) of the General Statutes, the provisions of the Uniform Administrative Procedure Act, chapter 54 of the General Statutes, govern this appeal. *McDermott* v. *Commissioner of Children & Youth Services*, 168 Conn. 435, 440.

[8] "This so-called substantial evidence rule is similar to the 'sufficiency of the evidence' standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords 'a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' [Citations omitted.]" *Lawrence* v. *Kozlowski*, 171 Conn. 705, 713; *Madow* v. *Muzio*, 176 Conn. 374, 381.

## III

### MUNICIPAL EMPLOYEE RELATIONS ACT

The labor board acted on the unions' complaints pursuant to the jurisdiction conferred upon it by the municipal employee relations act (the MERA); §§ 7-467 et seq. of the General Statutes; which was adopted in 1965 by the legislature. Public Acts, 1965, No. 159. The MERA extended the rights and obligations of collective bargaining to employees of local government. The act was designed to accomplish the salutary purpose of promoting harmony between local governments and their employees. The basic theme of this type of legislation "was that through collective bargaining the passions, arguments, and struggles of prior years would be channeled into constructive, open discussions leading, it was hoped, to mutual agreement." *H.K. Porter Co., Inc.* v. *N.L.R.B.,* 397 U.S. 99, 103; *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 584-85. "[L]abor relations acts are remedial enactments and as such should be liberally construed in order to accomplish their objectives . . . ." *Connecticut State Board of Labor Relations* v. *Board of Education,* 177 Conn. 68, 74. "In furtherance of that principle, exemptions or exclusions are to be strictly construed." *Success Village Apartments, Inc.* v. *Local 376,* 175 Conn. 165, 168.

To effectuate these principles of collective bargaining, the MERA makes it mandatory for local governmental employers and their employees "to meet at reasonable times . . . and confer in good faith with respect to wages, hours and other conditions of employment . . . ." General Statutes § 7-470 (c). The duty to bargain collectively and in good faith takes on more important dimensions in

the public sector of employment because employees of government are denied the right to strike. General Statutes § 7-475.

The language of the MERA regarding the duty to confer in good faith with respect to wages, hours and conditions of employment is similar to that contained in the National Labor Relations Act. This federal act provides that it shall be an unfair labor practice for an employer to refuse to bargain collectively with the representatives of its employees "in respect to rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. §§ 158 (a) (5), 159 (a). "For this reason, the judicial interpretation frequently accorded the federal act is of great assistance and persuasive force in the interpretation of our own act." *Imperial Laundry, Inc.* v. *State Board of Labor Relations,* 142 Conn. 457, 460; *New Canaan* v. *State Board of Labor Relations,* 160 Conn. 285, 291; *Windsor* v. *Windsor Police Department Employees Assn., Inc.,* 154 Conn. 530, 536.

The legislature has assigned to the labor board the primary task of construing the provisions of the MERA. General Statutes § 4-178; *Local 1219* v. *Connecticut Labor Relations Board,* 171 Conn. 342, 351. Accordingly, great weight must be given to the labor board's construction of the act. See *Ford Motor Co.* v. *N.L.R.B.,* 441 U.S. 488, 496; *Connecticut State Board of Labor Relations* v. *Board of Education,* supra. Of course, notwithstanding this deference to the decisions of the agency charged with the responsibility of administering the law, the court will judicially review the agency's decisions to determine if it acted arbitrarily, unreasonably, or contrary to law. *Seattle First National Bank* v. *N.L.R.B.,* 444 F.2d 30, 33 (9th Cir.) ; *Norwich* v. *Norwich Fire Fighters,* 173 Conn. 210, 214.

A requirement of residency at the time of or during employment has passed constitutional muster.[9] It has been held that an ordinance requiring police officers to maintain a particular residence during the period they are employed is not irrational and therefore does not violate the equal protection clause of the fourteenth amendment. *Detroit Police Officers Assn.* v. *City of Detroit,* 385 Mich. 519, appeal dismissed, 405 U.S. 950. In *McCarthy* v. *Philadelphia Civil Service Commission,* 424 U.S. 645, the United States Supreme Court held that such an ordinance does not violate the constitutionally recognized right to travel. Indeed, the United States District Court for the district of Connecticut found that this ordinance did not violate the fourteenth amendment when it was challenged on several grounds.[10] *Lorenz* v. *Logue,* 481 F. Sup. 173. A finding that the imposition of such a residency ordinance is constitutional does not, however, relieve the municipal employer from its obligation of good faith bargaining under the MERA.

---

[9] A durational residency requirement before employment does, however, interfere with the constitutionally protected right to travel. See *Memorial Hospital* v. *Maricopa County,* 415 U.S. 250, 269.

[10] The plaintiffs in that case contended the ordinance imposed "an unconstitutional burden on and impairment of their right to travel freely, both interstate and intrastate, and on their right to live and work where they choose and that it discriminates between them and a few other city employees on the one hand and the 'vast majority' of city employees on the other, depriving them of the equal protection of the laws in violation of the Fourteenth Amendment; that the requirement that employees seeking waiver show 'extreme hardship' is unconstitutionally vague on its face and as applied to the plaintiffs in violation of the Fourteenth Amendment; that the ordinance deprives plaintiffs of their right to continue to reside in their homes without due process of law in violation of the Fourteenth Amendment and that it imposes an obligation on the plaintiffs which fundamentally alters the terms of their employment with the city and impairs the obligations of the city's contracts with the plaintiffs in violation of Article I, Section 10, of the United States Constitution." *Lorenz* v. *Logue,* 481 F. Sup. 173.

## IV

### CONDITION OF EMPLOYMENT

The court turns to the issue of whether the residency requirement enacted by the municipal employer is a condition of employment within the meaning of the MERA and therefore a mandatory subject of bargaining. "The use of the phrase 'conditions of employment' reflects a judgment that the scope of negotiations should be relatively broad, but sufficiently flexible to accommodate the changing needs of the parties." *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 581-82. A condition of employment within the meaning of the MERA must have a material effect on the employment; a condition of employment does not include those matters which are only indirectly, incidentally or remotely related to employment. *Westinghouse Electric Corporation* v. *N.L.R.B.,* 387 F.2d 542, 547 (4th Cir.). This area of negotiability has been consistently expanded in order to serve the purpose of the MERA. Darcy, Foy, James & Kingston, "Connecticut Labor Relations Statutes and Decisions: Differences from Federal Law," 9 Conn. L. Rev. 515, 537-38.

It has been held that when a failure by an employee to meet or comply with a requirement may *directly* result in the termination of employment, it is a condition of his employment.[11] "The broad statutory term 'conditions of employment' may be construed to include the question whether a person

---

[11] The effect of a residency requirement can result in the termination of the employment relationship the same as the requirement for seniority; *Industrial Union of Marine & Shipbuilding Workers* v. *N.L.R.B.,* 320 F.2d 615, 620 (3d Cir.), cert. denied, *Bethlehem Steel Co.* v. *N.L.R.B.,* 375 U.S. 984; the establishment of layoff practices; *N.L.R.B.* v. *Frontier Homes Corporation,* 371 F.2d 974, 979-80 (8th Cir.); and other job security; *Fibreboard Corporation* v. *Labor Board,* 379 U.S. 203; all of which have been held to be conditions of employment.

shall continue in employment . . . ." *Board of Police Commissioners* v. *White,* 171 Conn. 553, 559 (1976); *Fibreboard Corporation* v. *Labor Board,* 379 U.S. 203, 222 (Stewart, J., concurring). In the present case, if an employee fails to become a city resident within six months of employment, he will, except in unusual cases,[12] have his employment terminated. Therefore, it clearly follows that the residency clause is a condition of employment for those employed before as well as those employed after January 1, 1978. Any other conclusion would torture the intent of the legislation.[13] The interpretation of the residency ordinance as a condition of employment is consistent with the labor board's prior holdings and is therefore entitled to great weight. *City of Bridgeport,* Conn. Labor Board, Decision No. 1500 (1977); *City of Hartford,* Conn. Labor Board, Decision No. 1353 (1975).

It is further clear that the residency ordinance as it applies to future employees is a subject for mandatory bargaining with the collective bargain-

---

[12] The ordinance provides that the residency review board of the municipal employer may grant waivers of the residency requirements for cases of "extreme hardship."

[13] "Of particular significance, indicative of the statutory intention in the use of the term 'conditions of employment,' is the report of the interim commission to study collective bargaining by municipalities which led to the adoption of Public Acts 1965, No. 159, which act included what is now General Statutes § 7-470 (c). We may properly consider such a report in determining the general intent of the legislature. With respect to the meaning of the term 'collective bargaining' the report stated: 'A definition of collective bargaining is also included. The subject matter is to include wages, hours and other conditions of employment. This latter phrase is intended to include the entire spectrum of conditions and benefits which apply to public employment, in addition to the commonly understood basic provisions relating to pay and hours of work, including but not limited to: seniority, grievance procedures, holiday and vacation pay, shift premiums, sick leave, jury duty, pensions and severance pay, insurance coverage of various kinds, seniority in promotions, transfers and layoffs, discipline and discharge and grievance arbitration provisions.' [Citations omitted.]" *Board of Police Commissioners* v. *White,* 171 Conn. 553, 559–60.

ing agent of the present employees. "The duty to bargain is a continuing one, and a union may legitimately bargain over wages and conditions of employment which will affect employees who are to be hired in the future." *N.L.R.B.* v. *Laney & Duke Storage Warehouse Co.,* 369 F.2d 859, 866 (5th Cir.).

Not everything which may be of general interest to the employee is a subject matter of compulsory bargaining under the MERA. It is clear there is no "duty to bargain collectively regarding such managerial decisions, which lie at the core of entrepreneurial control." *Fibreboard Corporation* v. *Labor Board,* 379 U.S. 203, 223. This management prerogative is equally applicable to the public sector. *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 583. The residency ordinance does not, however, reach the core of entrepreneurial control envisioned by Justice Stewart in *Fibreboard.* Its purposes are clearly stated by the legislative body in the ordinance, namely, to aid the city's declining tax base and economy.

The Michigan Supreme Court had no difficulty in finding that such a residency requirement was a condition of employment. *Detroit Police Officers Assn.* v. *City of Detroit,* 391 Mich. 44; annot., 84 A.L.R.3d 242, 281–82. Other jurisdictions have come to the same conclusion. "[T]he public employer who wishes to initially establish or modify a residency requirement that touches upon incumbent employees (present or future) must expect to bargain in good faith over the issue with the representative union." Hyford & Durkee, "Residency Requirements in Local Government Employment: The Impact of the Public Employer's Duty to Bargain," 29 Labor L.J. 343, 351.

The municipal employer in this case argues that the residency requirement is a continuing precondi-

tion for employment and therefore is not subject to mandatory bargaining. The Supreme Court of Michigan adequately answered this argument when it held: "We are not persuaded that the residency requirement, regulating as it does the conduct of police officers throughout their years on the force, may be correctly labeled a 'continuing recruiting requirement.' In addition, we expressly reject the City's argument that any term or condition of employment may be so labeled. A recruiting requirement, whether it is age, mental competency, physical characteristics or residency, focuses on that point in time at which a candidate for employment is hired. At that moment the new recruit must meet established standards. Once an applicant has met these standards and has been hired as an employee, the 'recruiting requirements' as such do not continue to regulate his or her right to hold the job. Employment standards are, of course, lawful, but they must be treated as a term and condition of employment." *Detroit Police Officers Assn.* v. *City of Detroit,* 391 Mich. 44, 61.

## V

### WAIVER

The second issue raised by the municipal employer is whether the failure of the unions to request bargaining while the ordinance was in the legislative process constituted a waiver. It is true that not all unilateral actions on the part of an employer or employee concerning matters which are subject to mandatory bargaining are violations of the MERA. The employer and employee are only required to bargain in good faith. General Statutes § 7-470. "To determine the question of good faith the totality of the party's conduct throughout the negotiations must be considered." *Norwich* v. *Nor-*

*wich Fire Fighters,* 173 Conn. 210, 216; *West Hart-ford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 591.

The municipal employer argues that the unions were under an obligation to demand that it bargain before the adoption of the ordinance. It is correct that the MERA does not require the employer to seek out its employees and request them to participate in negotiations over mandatory subjects of collective bargaining. "To put the employer in default . . . the employees must at least have signified to . . . [the employer] their desire to negotiate." *N.L.R.B.* v. *Columbian Co.,* 306 U.S. 292, 297–98; *Alaska Roughnecks & Drillers Assn.* v. *N.L.R.B.,* 555 F.2d 732, 735 (9th Cir.). In the present case, however, the labor board correctly found that there was no duty on the part of the union to request bargaining during the period of time the amendment to the residency clause was in the legislative hopper.[14] There was no obligation on the part of the unions to anticipate that the ordinance would survive the political process and become law. This is particularly so in the present case, since the original proposal to amend the residency ordinance emerged in a substantially changed form following the twenty-one month legislative process.

It makes sense not to require a union to request bargaining on every proposal made in a legislative body of a municipality that may affect wages, hours

---

[14] The municipal employer argues that there was no evidence to support the eighteenth paragraph of the finding which is as follows: "The Unions believed the proposed ordinance would be dropped after the January 1977 public hearing until they received notice of the November 1977 informal hearing." Whether there is the necessary substantial evidence to support this finding is not determinative of the issues in this case. Even if this finding were disregarded, there is sufficient evidence to sustain the labor board's conclusion that there was not a waiver of the right to bargain. See *Sumara* v. *Liquor Control Commission,* 165 Conn. 26, 29.

and conditions of employment when the subject of that proposal could not be enforced unless adopted into law. If bargaining were required on every proposal affecting wages, hours and conditions of employment, it would place an onerous burden upon both the municipal employer and the employee. In recognition of this, the labor board has ruled that a complaint alleging a unilateral change of condition of employment on the basis of a proposal pending before a legislative body or charter revision commission is premature. *City of Bristol,* Conn. Labor Board, Decision No. 1578 (1977); *City of Hartford,* Conn. Labor Board, Decision No. 1353 (1975).

The cases relied upon by the municipal employer in claiming that the unions were under a duty to demand bargaining are readily distinguishable. In *Norwich* v. *Norwich Fire Fighters,* 173 Conn. 210, the municipality had put the condition of employment into effect by executive decision for a period of two years before the union made its complaint. In the present case the condition was not effective until enacted into law. No single legislator or member of the executive branch of government of the municipal employer had the authority to require municipal employees to become residents of the city of New Haven; nor was it ever represented or made clear that the adoption of such an ordinance was a certainty.

The remaining cases relied upon by the municipal employer come from the private sector. In *N.L.R.B.* v. *Spun-Jee Corporation,* 385 F.2d 379 (2d Cir.), it was found that the union was clearly put on notice of the intended shutdown of the plant and its removal to a different state and that the union had thus waived its right to bargain. In addition, when it is within the power of the employer to put into effect its intention without legislative action, as it

is in the private sector, then it may be sufficient under all of the circumstances to obligate the union to demand bargaining; but when the legislature is required to make changes in the wages, hours or other conditions of employment, the mere intention of one or more legislators should not be sufficient to put the union on notice that it must request bargaining. The case of *U.S. Lingerie Corporation*, 170 N.L.R.B. 750, is similar to *Spun-Jee*, supra; there the union was also put on notice of the move.

In sum, the requirement of residency for employees of a municipality is clearly a condition of employment within the meaning of the municipal employee relations act. It therefore follows that the municipal employer was under an obligation to bargain in good faith on the issue. By unilaterally requiring its employees to maintain their residence in New Haven, without good faith bargaining, the municipal employer violated § 7-470 of the General Statutes. It is further clear that the failure of the union to demand bargaining prior to the enactment of the ordinance did not constitute a waiver of their right to bargain.

Accordingly, the appeal of the city of New Haven and the New Haven board of education is hereby dismissed.