[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This administrative appeal is brought pursuant to Connecticut General Statutes 4-183. The plaintiff, Local 1186 of Council 4, AFSCME, AFL-CIO (hereinafter "the Union") was the complainant before the defendant Connecticut State Board of Labor Relations (hereinafter "the Labor Board"). The Union is the legally constituted bargaining representative of all custodial, maintenance and secretarial employees of the defendant, Consolidated School District of New Britain (hereinafter "the Board of Education"), the respondent before the Labor Board.
On March 7, 1989, the Union filed with the Labor Board a complaint alleging that the Board of Education had engaged and was engaging in practices prohibited by General Statutes7-470(c) of the Municipal Employees Relations Act (hereinafter "MERA"); specifically, the Board of Education's unilateral implementation of a no smoking policy on all school property at all times. On October 18, 1989, a hearing was held before the Labor Board and its decision dismissing the Union's complaint against the Board of Education was dated March 28, 1990.
The Labor Board concluded: that the Board of Education's decision to ban all smoking on school property at all times concerned an educational policy decision that was within management's prerogative to make unilaterally; that implementation of the smoking ban on school property did not CT Page 10718 involve a mandatory subject of bargaining; and that the Board of Education did not refuse to bargain in violation of MERA when it made and implemented the smoking ban as it was part of an educational policy reserved to the discretion of the Board of Education in order to preserve an educational policy interest.
At issue is whether the Labor Board erred in concluding: that a smoke-free policy was not a mandatory subject of bargaining; that arguendo, even if a smoke-free policy was a non-mandatory subject of bargaining, that the Board of Education was duty bound to bargain the impacts of a changed condition of employment during the term of a collective bargaining agreement; and that the Labor Board misapplied the rules of statutory construction when analyzing the language of General Statutes1-21b(b)(5) and 31-40q so as to permit the Board of Education to ban smoking on school grounds at all times, including when children were not present.
MERA, General Statutes 7-467 to 7-477, sets forth the rights and responsibilities of municipal employers and their employees. Section 7-468 provides that employees have the right to bargain collectively through representatives on "conditions of employment". Section 7-469 states that the municipal employer and employee organization have a duty to bargain collectively. Section 7-470 prohibits municipal employers from refusing to bargain collectively in good faith with an employee organization.
"The significance of calling something a `condition of employment' is that it then becomes a mandatory subject of collective bargaining, under the reasoning of N.L.R.B. v. Wooster Division, Borg Warner Corporation, 356 U.S. 342,78 S.Ct. 718, 2 L.Ed.2d 823." West Hartford Education Assn., Inc. v. DeCourcy, 162 Conn. 566, 577, 295 A.2d 526 (1972). "A condition of employment within the meaning of the MERA must have a material effect on the employment; a condition of employment does not include those matters which are only indirectly, incidently or remotely related to employment." New Haven v. State Board of Labor Relations, 36 Conn. Sup. 18, 27,410 A.2d 140 (Super.Ct. 1979). Not everything which may be of general interest to the employee is a subject matter of compulsory bargaining under MERA. It is clear there is "no duty to bargain collectively regarding such managerial decisions, which lie at the core of entrepreneurial control." Fibreboard Corporation v. Labor Board, 379 U.S. 203, 223. 85 S.Ct. 398, 13 L.Ed.2d 233. This management prerogative is equally applicable to the public sector. DeCourcy, supra 583. Labor relations acts are remedial enactments, however, and as such should be liberally construed in order to accomplish their objectives. Connecticut State Board of Labor Relations v. Board of Education, 177 Conn. 68, CT Page 10719 74, 411 A.2d 924 (1979). "In furtherance of that principle, exemptions or exclusions are to be strictly construed." Success Village Apartments, Inc., v. Local 376, 175 Conn. 165, 168,397 A.2d 85 (1978). Therefore, the use of the phrase "conditions of employment" reflects a judgment that the scope of negotiations should be relatively broad, but sufficiently flexible to accommodate the changing needs of the parties. DeCourcy, supra 581-582.
A case closely related to the instant matter, cited and relied upon by both parties, is In the Matter of Portland Board of Education and Education Association of Portland, Decision No. 2001 (1981). In Portland, the Labor Board concluded that the school board's unilateral action in banning smoking inside school buildings did affect employee working conditions, but was not a mandatory subject of bargaining as it concerned a matter of educational policy fundamental to the central mission of the public school enterprise. In reaching its conclusion, the Labor Board used a balancing test discussed in DeCourcy, supra, and applied in Town of East Haven, Decision No. 1279 (1975):
 In drawing the line within that area between those items that must be bargained over and those which the employer may act on without bargaining a balance must be struck. And in striking it the tribunal should consider, we believe, the directness and the depth of the item's impingement on conditions of employment, on the one hand, and, on the other hand, the extent of the employer's need for unilateral action without negotiation in order to serve or preserve an important policy decision committed by law to the employer's discretion.
In Portland, the Labor Board found that a ban on smoking in school buildings when students were present did affect employee working conditions. Nonetheless, the Labor Board concluded that such a unilateral action was not a mandatory subject of bargaining as it concerned a matter of educational policy fundamental to the central mission of the public school enterprise.
This court agrees that the balancing test required by DeCourcy, as outlined in Portland, is equally applicable to the instant matter. Accordingly, the determination that the best way to teach students about the undesirability of smoking is to set an example, particularly on school property, is committed by law to the educator/employer's discretion. CT Page 10720
The court turns to the issue of whether the School Board should have been required to bargain with the Union over the secondary impact on working conditions resulting from the new non-smoking policy. In prior decisions, the Labor Board has articulated the principle that even where the subject of a unilateral change is non-mandatory (permissive) and falls within management's prerogative, an employer must bargain over a substantial change secondarily impacting upon working conditions. Town of Stratford, Decision No. 999 (1971); City of Bristol, Decision No. 1305 (1975); City Bridgeport, Decision No. 1319-A (1975).
In Town of Rocky Hill, Decision No. 2501 (1986), the Labor Board held that a smoking ban implemented for the protection of the Town's investment in its computer equipment was a prerogative of management, requiring no bargaining with its Union employees. Nonetheless, the Labor Board concluded:
 Yet, the impact of this employer action impinges directly and deeply on the conditions of employment of the Town's employees, and thus the DeCourcy balancing test must be brought into play — the balance must be struck. The question is not whether the decision to protect the computer system must itself be bargained, but whether the impact of that decision on the employees must be the subject of bargaining. We hold that it must.
Similarly, in the instant matter, the question is not whether the decision to ban smoking on school property must be bargained, but whether the impact of that decision on the employees must be the subject of bargaining. Under MERA, the Board of Education had no obligation to bargain about the new smoking ban, thus, it was not a prohibited practice to institute the smoking policy unilaterally. It was, however, the Board of Education's duty to bargain in good faith about the secondary results of that ban; its refusal to bargain was a violation of the Act.
By ordering the Board of Education to bargain over the impact of its decision to educate by example, i.e., the smoking ban, it should be clear that the court is not ordering any particular outcome to the bargaining process. As stated in Town of Rocky Hill, supra 8, the duty to bargain is not the duty to agree:
It is, as always, the duty to bargain CT Page 10721 in good faith in an effort to reach a resolution of a problem. And, as always, if an agreed-upon resolution eludes the parties and impasse is reached despite good faith bargaining, the [Board of Education] may then take action unilaterally to protect its [educational goal]. [emphasis supplied].
Finally, the court considers whether the Labor Board correctly interpreted and applied General Statutes 1-21b(b)(5) and 31-40q to the circumstances of the present case. Section 1-21b(b)(5) provides: "No person shall smoke notwithstanding the provisions of section 31-40q, within a public school building while school is in session or student activities are being conducted, except that a local or regional board of education may designate one or more smoking areas for its employees and may permit smoking in rooms used for private functions. . . ." Section 31-40q provides in pertinent part that: "Nothing in this section may be construed to prohibit an employer from designating an entire business facility as a non-smoking area."
The Union argues that the Board of Education misinterpreted 1-21b(b)(5) and exceeded its statutory authority in imposing a smoking ban when students were not present. The Board of Education asserts and the Labor Board concurs that the legislature's use of the word "may" gives the Board of Education the discretionary authority to ban smoking even at times when school is not in session and/or when no public activities are being conducted.
"The use of the word `may' . . . is in itself a clear indication that a discretionary power, rather than a mandatory duty, was intended." Schulman v. Zoning Board of Appeals,154 Conn. 426, 428, 226 A.2d 380 (1967). Section 1-21b(b)(5) grants a Board of Education the discretionary power to designate a smoking area for its employees, while specifically banning smoking within a public school building while school is in session or student activities are being conducted. The statute does not ban smoking within the school at all times. The word "may" in the statute confers upon the Board of Education the power to designate smoking areas, not to ban smoking completely even when students are not present, absent bargaining.
With regard to 31-40q, while it may apply to the employer in this matter, it too has been misinterpreted. That statute allows an employer to designate an entire business facility as a non-smoking area. The smoking ban in question forbids smoking at all times by all persons on all school property. Section CT Page 1072231-40q(a)(4) defines a "business facility" as a structurally enclosed location or portion thereof at which fifty or more employees perform services for their employer. Here the ban forbids smoking even outside of any school building, and nothing in the record establishes that fifty or more employees perform services in any school building. Additionally, although 31-40q
may apply to this employer, it is not part of MERA and merely states that "[n]othing in this section may be construed to prohibit an employer from designating an entire business facility as a non-smoking area." (emphasis added).
The court concludes, therefore, that nothing in1-21b(b)(5) or 31-40q allows this employer to circumvent MERA's requirement to bargain over the impact of a significant changed condition of employment.
Accordingly, the appeal of the Union is hereby sustained and the matter is remanded to the Labor Board for further proceedings consistent with this opinion.
MARTIN, J.