[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
Plaintiff City of Hartford appeals a decision of the Connecticut State Board of Labor Relations holding the City in violation of Connecticut General Statutes Section 7-470(a)(6) by refusing to comply with a previous grievance decision involving flexible time for its employees. The pertinent statute, Section 7-470(a) provides as follows:
 Municipal employers or their representatives or agents are prohibited from: (6) refusing to comply with a grievance settlement, or arbitration settlement or a valid award or decision of an arbitration panel or CT Page 15937 arbitrator rendered in. accordance with the provisions of Section 7-472.
The issue before the court is the interpretation of that statute and its application to the facts of this case.
The facts are as follows:
The plaintiff City of Hartford (hereinafter "City") and the defendant Hartford Municipal Employees Association (hereinafter "Union") are an employer and an employee organization within the meaning of the Municipal Employee Relations Act, Section 7-467, et. seq., particularly Sections7-467(1) and (2). The City and the Union entered into a collective bargaining agreement providing for the following procedure to be followed when a grievance or dispute arose between the parties concerning the application, meaning or interpretation of the agreement:
Step 1. The aggrieved employed, who may be represented by a representative of the Union, shall present the facts to his immediate supervisor who shall render a decision within ten working days.
Step 2. If the grievance is not resolved in step 1, it shall be reduced to writing and presented to the department head, who shall render a decision in writing within ten working days.
Step 3. If the grievance is not resolved in Step 2, it shall be presented to the Director of Personnel who shall render his decision within fifteen working days.
Step 4. If the grievance is not resolved to the satisfaction of the parties by Step 3, it shall be submitted to binding arbitration before the State Board of Mediation and Arbitration.
The City Personnel Rules and Regulations provide at Rule X that the normal working hours of employees working a 35 hour work week is from 8:30 a.m. to 4:30 p.m., with an hour for lunch. Rule X(2)(b) provides that certain employees, including civil engineers, may work a flexible schedule.
On July 6, 1998 Husein Osman went to work at 8:00 a.m. and left work at 4:00 p.m. On July 10, 1998 Osman was issued a written reprimand for leaving work without permission. Osman grieved that reprimand through the first, second and the third steps of the grievance procedure. In each instance his grievance was denied on the grounds that Mr. Osman had been told in the past to request permission before changing his hours of work but chose not to do so on July 6, 1998. At the third step, the CT Page 15938 administrative personnel analyst determined that "the written reprimand was issued for just cause in accordance with Article II, Section 2.4 of the Collective Bargaining Agreement between the City of Hartford and the Hartford Municipal Employees Association." Mr. Osman aggrieved that decision to Step 4 for binding arbitration and his case is currently pending before the Board of Mediation and Arbitration.
The Union filed a prohibited practice complaint before the defendant Connecticut State Board of Labor Relations (hereinafter "Board"), amended on January 27, 1999, stating that the City violated the Municipal Employees Relations Act when it required Osman to obtain prior permission from a supervisor before working a flexible schedule. The Labor Board, in its decision of September 21, 1999, concluded that the City had violated Section 7-470(a)(6) in that it "failed to abide by the 1997 grievance settlement by requiring employees to get approval before occasionally flexing the start and end times of their work day." The Board ordered the City to: (1) cease and desist from failing to comply with the earlier grievance decision of July 1, 1997, and (2) rescind the written reprimand issued to Husein Osman. The City appeals that Labor Board decision to this court.
The standard of review to be applied by this court is clearly set forth in the Uniform Administrative Procedure Act, Conn. Gen. Stat. Section4-183, and the numerous cases interpreting that Act. Specifically, as provided in Section 4-183(j) the court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." The statute further provides that a court shall affirm a decision of an agency unless the decision violates constitutional or statutory provisions, is in excess of the statutory authority of the agency, affected by other error of law, or is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
It is the function of courts to expound and apply governing principles of law, Lieberman v. State Board of Labor Relations, 216 Conn. 253, 262
(1990). However, courts have traditionally accorded great deference to the Labor Board's interpretation and application of labor-related statutes, contracts and regulations because of such board's recognized expertise. Connecticut State Board of Labor Relations v. Board ofEducation, 177 Conn. 68, 74 (1979). Accordingly, great weight should be given to the Labor Board's interpretation and application of Section7-470(a)(6) in this case. Board of Education v. Connecticut State Boardof Labor Relations, 190 Conn. 235, 460 (1983); City of New Haven v. StateBoard of Labor Relations, 36 Conn. Sup. 18, 25 (1979)
The Labor Board bases its decision here on appeal on a prior second CT Page 15939 step grievance decision by Kathleen Morey dated July 1, 1997. That case involved two civil engineers, Jay Bertoli and Richard St. Pierre, who claimed they were entitled, under Hartford's Personnel Rules and Regulations, to work a flexible schedule. Morey decided they were and upheld their grievance. The Labor Board determined that by the City failing to abide by Morey's 1997 grievance decision in deciding the Osman case, the City committed a prohibited labor practice in violation of Section 7-470(a)(6).
The Labor Board determined that by the City failing to abide by Morey's 1997 grievance decision in deciding the Osman case, the City committed a prohibited labor practice in violation of Section 7-470(a)(6).
The Labor Board's decision gives rise to two questions as to the meaning of Section 7-740(a)(6): (1) whether a prohibited labor practice under that subsection means the failure to comply with the determination of the specific dispute giving rise to the present grievance, or whether it means the failure to apply the determination of a prior grievance to the dispute giving rise to the present grievance; (2) whether the language in subjection (6) of refusal to comply with "a grievance settlement" means refusal to comply with a grievance decision.
All the parties agree that no Connecticut courts have ruled on these issues. However numerous Labor Board decisions have interpreted the statute on these points as follows:
When a grievance relates to particular circumstances, such as those involving discipline of employees, the terms of the disposition will not extend upon the situation of the grievance itself. City of Stamford, Decision No. 3087 (1993), (rescission of lay off s) aff'd City ofStamford v. Connecticut State Board of Labor Relations, No. CV 93-0131199, J.D. Hartford/New Britain (Sept. 23, 1994, Norko, J.).[1] City ofBristol, Decision No. 2202 (1983), (retirement status for particular bargaining unit members); Smith Fire District of Middletown, Decision No. 1542 (1977), (removal of grievant's suspension)
When a grievance relates to an interpretation of collective bargaining agreement provisions and the parties clearly intend the decision to have broad significance, its application will not be limited to the specific grievance but define the parties' rights and obligations in the future.City of Hartford, Decision No. 3503 (1997), Town of Seymour, Decision No. 2068 (1981); City of New Haven, No. 3060 (1992)
Also, the Labor Board has frequently interpreted "grievance settlement" as used in subsection (6) of the statute to mean grievance decision. Townof East Hartford, Decision No. 1439 (1976) aff'd. Conn. State Board ofLabor Relations v. East Hartford, No. 214657, J.D. Hartford/New Britain at Hartford, May 12, 1978 (Burns, J.).[1] City of Waterbury v.Waterbury Parking Authority, Decision No. 2195 (1985); City of Stamford, Decision No. 3087 (1993). CT Page 15940
The Labor Board's interpretation of the statute it applies is entitled to great deference, Connecticut State Board of Labor Relations v. Boardof Education, supra, but it is not absolutely controlling. The court still has the obligation to construe the statute in accordance with established canons of statutory construction.
The first of these canons is to give plain meaning to statutory words. As for the first of the issues stated above, the wording of subsection (6), "refusing to comply with a grievance settlement" gives no clear insight. "Comply" means "to act in accordance with another's request, rule or wish." (American Heritage Dictionary of the English Language, Third Edition, 1996). It could include carrying out the determination of a single grievance, or applying that determination as a precedent to a subsequent grievance.
However, the meaning of the word "settlement" is clear. It is defined in Black's Law Dictionary, Seventh Edition (1999) as "an agreement ending a dispute or lawsuit" and is distinguishable from a "decision," defined by the same dictionary as "a judicial determination after consideration of the facts and law." Subsection (6) makes that distinction by referring to both "a grievance settlement or arbitration settlement" and "a valid award or decision of an arbitration panel."
To the extent there is any ambiguity, resort may be made to the legislative history of the statute, and in this instance that proves illuminating. Subsection (6) of Section 7-470(a) (and incidentally subsection (4) of Section 7-470(b)) derive from House Bill No. 6925 of the 1975 legislative session. That bill added as a prohibited labor practice, applying to both municipal employers and municipal employee organizations, the following:
 (6) Refusing to comply with an agreement to settle a grievance or a decision or award of an arbitration panel or arbitrator rendered under Section 7-472
within thirty days after such grievance settlement was reached or such arbitration award rendered, unless the State Board of Labor Relations finds, in accordance with the procedure established in subdivision (4) of Section 7-471, that one or more conditions exist which would be a basis for vacating or correcting an arbitration award under Section 52-418 or Section 52-419.
During the course of the debate on the floor of the House on April 23, 1979 Representative Badolato explained the bill as follows:
CT Page 15941
 " . . . We're talking about two parties that have negotiated an agreement . . . a contract . . . which spells out the conditions of employment, and that contract also includes in it a procedure to file a complaint . . . a grievance, if you will . . . if there is a violation of that contract, and if an individual feels aggrieved and files a grievance claiming that there is a violation of the contract, he pursues it through the grievance procedure. . . .What this bill addresses itself to is that area where the parties meet, discuss the grievance, arrive at an agreement and then after arriving at an agreement, one side or the other reneges . . . refuses to abide by that agreement. This would then allow the aggrieved individual to seek relief from the State Board of Labor Relations in the form of a prohibitive [sic] practice. Whether it be the employer or the employee, they would have that right. . . .
 "The bill does nothing more than attempt to keep the parties honest in their dealings with each other. It allows the parties to go to the State Board of Labor Relations for relief and that is what the State Board of Labor Relations is for . . . for the parties to seek relief. Individuals involved . . . both the town . . . the employer . . . and the employee organization involved would have less expense going to the State Board of Labor Relations than they would if they had to go to the courts."
Connecticut General Assembly House Proceedings 1975, Volume 18, Part IV, pp. 1754-1755.
Later in the debate Representative Matthews asked through the speaker, Representative Badolato a question about arbitrator's award and after answering the question, Representative Badolato said, ". . .but if it is a question as to the settlement of a grievance that is not an arbitrator's award it would not [have to go to the courts]. The State Board of Labor Relations would have the authority to require the parties to comply with the settlement." Id. p. 1757.
The House did not vote on the bill on April 23, 1975 but when it came to the floor of the House on April 29, 1975, Representative Bogan, introduced House Amendment A which changed the bill to the form it now appears as subsection (6) in Section 7-470(a) and Subsection (4) in Section 7-470(b). Specifically, the amendment changed the language of the CT Page 15942 bill, "refusing to comply with an agreement to settle a grievance" to "refusing to comply with an aggrievement settlement," and it eliminated the reference to complying with the grievance settlement or arbitration award "within thirty days after such grievance settlement was reached or such arbitration award rendered," and the clause "unless the State Board of Labor Relations finds etc." The amendment was unanimously adopted. The speaker ruled the amendment was technical. There was no further debate on the bill as amended and it passed in the House, on April 29, 1975. Id. pp. 1272-1273. The bill passed without debate in the Senate by being placed on the consent calendar on May 7, 1975. Connecticut Senate Proceedings, 1975 Volume 18, Part V, page 1580.
The legislative history sheds considerable light on the meaning of the statute. The House debate was on the original bill. The amendment, coming after the debate, and being ruled technical (so as not to require returning the bill as amended to the Legislative Commissioner's Office) must be deemed not to have changed the substance of the bill nor the intent of the House in passing the bill as amended.
By the bill providing that a prohibited labor practice was refusing to comply with a grievance settlement or arbitration award within thirty days of the settlement or award, it was clearly referring to the resolution of the particular dispute giving rise to the grievance, and not to refusing to comply with a previous grievance disposition. Although there was no debate on the amendment eliminating the thirty day provision, and the amendment was ruled technical, there may be a tiny uncertainty as to whether, by adopting the amendment, the legislature intended to make a prohibited labor practice the refusal to abide by the precedent of a previous grievance disposition in a case involving other parties.
However, what is absolutely clear is that by the legislature adopting the amendment changing the words, "refusing to comply with an agreement to settle a grievance" to "refusing to comply with a grievance settlement" it did not intend any change whatsoever in meaning. The gravamen of the prohibited labor practice, as explained by Representative Badolato in the House floor debate on the bill, was, "What this bill addresses itself to is that area where the parties meet, discuss the grievance, arrive at an agreement and then after arriving at thatagreement, one side or the other reneges . . . refuses to stick by thatagreement." (underlining added)
The legislature clearly knew the distinction between a settlement and decision because it used both words in § 7-470(a)(6). By the express words of the statute, the legislature clearly provided that a prohibited labor practice included a refusal to comply with a grievance settlement. CT Page 15943 It did not say grievance decision. The legislature had good reason for distinguishing a grievance settlement from a grievance decision. A settlement represents an agreement by the parties that the legislature intended to require the parties to be bound by. A grievance decision arises out of early steps of a grievance procedure, is rendered by low level city officials, in an informal setting, without attorneys present, and without a transcript made. The legislature did not intend that a refusal to comply with such a decision to constitute a prohibited labor practice. In contrast, the legislature did expressly provide that refusing to comply with an arbitrator's decision did constitute a prohibited labor practice.
While the Labor Board in its decisions has treated a failure to comply with a grievance decision as if it were a grievance settlement, that interpretation is not consistent with the statute. If the Labor Board believes its interpretation represents sound labor policy, its recourse must be to the legislature.
Here the Labor Board found the City committed a prohibited labor practice by refusing to apply a previous second step grievance decision, reached over a year earlier in another dispute, to the Osman grievance. That was legal error.
The Labor Board committed further legal error in finding the City committed a prohibited labor practice and ordering a recission of the reprimand, while the Osman grievance was pending before the Board of Mediation and Arbitration. The City grievance procedure provides, in its collective bargaining agreement, for Step 4 to be binding arbitration before the State Board of Mediation and Arbitration. The Osman grievance was at Step 4 when the Union initiated the prohibited labor practice action and the Labor Board rendered its decision.
It is an elementary principle of administrative law that a litigant must first exhaust his administrative remedies before he can resort to the courts. Connecticut Life Health Inc. Guaranty Ass'n v. Jackson,173 Conn. 352, 358 (1997). The principle is "grounded on a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions." Concerned Citizens of Sterling v. Sterling,204 Conn. 551, 557 (1988). Moreover, a favorable outcome before the agency will render review by the court unnecessary. Pet v. Department ofHealth Service, 207 Conn. 346, 351-52 (1938)
That rule should apply by analogy to this case. Just as this court will not hear an appeal of the decision of the Labor Board until all proceedings before the Board have been concluded, so the Labor Board CT Page 15944 should not hear a prohibited labor practice complaint of a refusal to comply with a grievance settlement until the grievance has proceeded through all steps of the City grievance procedure, or has been abandoned. Certainly, where the grievance, as here, is still pending before the State Board of Mediation and Arbitration the Labor Board should not have acted on it.
The parties have cited no authority on the point and this court can find none. But it makes sense for the entire grievance procedure provided for in the collective bargaining agreement between the parties to be followed before a litigant can invoke the Labor Board to determine that a prohibited labor practice has been committed relating to that grievance. Because it makes such sense this court so holds. While failure to exhaust administrative remedies deprives a court of jurisdiction to hear an administrative appeal, this court will not find the Labor Board lacked jurisdiction, but it will find that its decision is affected with an error of law. § 4-173(j)(4).
Based on the foregoing this appeal is sustained.
Robert Satter State Judge Referee