[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The present action arises from an April 30, 1991 decision CT Page 3830 of the defendant, the Connecticut State Board of Labor Relations (hereinafter "the Board"), dismissing a complaint filed on April 25, 1990 by the plaintiff, Local 2405, Council 4, AFSCME, AFL-CIO (hereinafter "the Union"). The complaint alleged that city of Norwalk had engaged in a practice prohibited by the Municipal Employees Relations Act (hereinafter "MERA") because the City had subcontracted sanitation work, specifically certified to the Union, to an outside contractor and refused to bargain with the Union.
The Union filed its complaint with the Board pursuant to General Statutes 7-471(4) and notice of the date of the hearing followed. On October 29, 1990, a hearing was held before the Board at which time testimony was taken, exhibits were received, arguments were heard from both parties, and briefs were filed. The Board issued its decision (No. 2912) on April 30, 1991 dismissing the Union's complaint and the decision was sent to the parties. It is from this decision that the Union appeals.
The Court finds that the Board failed to consider the five factors set forth in Westinghouse Electric Corp. v. Local 711, 150 NLRB 1574, 1576 (1965) in determining the City of Norwalk's obligation to bargain collectively regarding subcontracting. Therefore, the court orders this case remanded to the Board to make the appropriate findings under Westinghouse.
I FACTS
The facts leading up to the alleged violation of MERA are as follows: Local 2405 is the exclusive bargaining representative for a unit of municipal employees including employees of the Department of Public Works. (Return of Record ["ROR"], Exhibit #3, Transcript of Hearing before the Connecticut State Board of Labor Relations held on October 29, 1990 ["Transcript"], p. 9). The City of Norwalk is a municipal employer within the meaning of MERA.
The City of Norwalk is divided into six districts for various municipal purposes. (ROR, Transcript, p. 7, 10). The City has approximately 32,000 residential units, of which approximately 23,000 are located in the fourth district (ROR, Decision No. 2912, pp. 2). The 23,000 residential units are comprised of 15,000 homes, and 8,000 condominiums. (ROR, Transcript, pp. 7, 56-57, 61). The Union members who work for the Solid Wastes Collection Division of the Department of Public Works are responsible for the collection of refuse in Norwalk's fourth district, but are not responsible for the collection of CT Page 3831 refuse in any of the other districts or the condominiums located in the fourth district. (ROR, Transcript, p. 61). Additionally, of the 15,000 homes in the fourth district, approximately 12,000 utilize the City's refuse collection services, while the remainder employ private refuse collection services. (ROR, Transcript, p. 56). The City does not provide refuse collection services for any of the other five districts. (ROR, Transcript, p. 10).
In January and February of 1990, the City advised the Union that layoffs might be needed and proposed the elimination of two crews of refuse workers for a total of six positions. (ROR, Transcript, p. 13). Through negotiations, the City and the Union were able to reach an agreement whereby only one refuse worker was eliminated. Through attrition and the transfer of one employee, all other layoffs were avoided. (ROR, Transcript, p. 14).
In January, 1990, without giving notice to the Union, the City advertised publicly for proposals from contractors to implement a recycling program, mandated by the State, which would include the collection of cans, glass, plastic, and newspapers in the fourth district to begin in July, 1990. (ROR, Transcript, pp. 61-62). The pickup of recyclables was proposed to occur along the same routes that the Union members followed, and materials collected by the successful contractor would be transported to a regional processing center in Stratford. (ROR, Transcript, pp. 33, 65). Eventually, the contract for collection of recyclable materials was awarded to NRS Carting Company. (ROR, Transcript, pp. 32-33). Shortly thereafter, a newspaper article concerning the contract appeared in the Norwalk Hour and it was through this article that the Union learned of the City's intention to subcontract the recycling program. (ROR, Transcript, p. 18-19).
On March 16, 1990, soon after learning about the City's decision to subcontract, the Union wrote to the City's Acting Director of Personnel demanding that the City cease and desist subcontracting the work of Union employees. The Union also sought bargaining over the subcontracting of sanitation work. (ROR, Exhibit #3(4), Letter from David Cooper, Staff Representative, Council #4, to Beverly Nelson-Glode, Acting Director of Personnel for the City of Norwalk, ROR, Transcript, pp. 20-21). When the City refuses to bargain with the Union, the Union filed a complaint with the Board on April 25, 1990. On April 30, 1991, the Board dismissed the Union's complaint concluding as follows:
 1. The collection of residential refuse in the Fourth District of the City of Norwalk has been, CT Page 3832 for some time, work shared by the City's department of Public Works and private refuse haulers.
 2. Where a certain type of work has been by practice performed both by bargaining unit and by non-bargaining unit workers, continued instances of sharing such work do not violate the Act.
 3. The City's action in contracting with a private firm for the collection of recyclable materials and the transporting of those materials to a regional collection site constitutes an extension of the shared work already in existence, and does not constitute a prohibited practice or a violation of the Act.
(ROR, Decision of the Connecticut State Board of Labor Relations, Decision No. 2912, dated April 30, 1991 ["Decision No. 2912"], p. 3).
The plaintiffs filed the instant appeal with the Superior Court of Connecticut on June 11, 1991 pursuant to General Statutes 4-183 naming both the Connecticut State Board of Labor Relations and the City of Norwalk as defendants.
The Union claims that the Board's decision is in violation of the statutory provisions of MERA, in excess of its statutory authority, affected by errors of law, and clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. The Union further claims the Board's decision is arbitrary in that it is erroneous as a matter of law and reaches conclusions which are inconsistent with the facts on the record. (Complaint, para. 7).
The defendant City of Norwalk was served notice of the instant appeal on June 4, 1991 and the Board was served on June 5, 1991. The defendant Board filed its answer on July 10, 1991 and submitted the record of the proceedings before the Board on August 12, 1991. The defendant City of Norwalk filed its answer on July 5, 1991.
II JURISDICTION
Appeals from administrative agencies exist only under statutory authority. Citizens Against Pollution, 217 Conn. 143,152, 584 A.2d 1183 (1991); Tarnopol v. Conn. Siting Council,212 Conn. 157, 163, 561 A.2d 931 (1989). A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions which create it. Citizens Against Pollution, supra, 152. Tarnopol, supra, 163-64. "Such provisions CT Page 3833 are mandatory, and, if not complied with, the appeal is subject to dismissal." (Citations omitted). Citizens Against Pollution, supra, 152. "A procedural default that implicates subject matter jurisdiction cannot be waived and may be raised at any time." (Citations omitted). McQuillan v. Department of Liquor Control, 216 Conn. 667, 670, 583 A.2d 633
(1990).
The plaintiff appeals pursuant to General Statutes 4-183, part of the Uniform Administrative Procedures Act ["UAPA"]. It has been held that appeals from decisions of the Board are properly brought pursuant to the UAPA:
 Although the Municipal Employee Relations Act (MERA) also grants a right of judicial review of the Labor Board's final order, Conn. G.S. Secs. 7-471, 31-109, this Court has jurisdiction to review the instant matter pursuant to the UAPA. The defendant Connecticut State Board of Labor Relations is an agency as defined in the UAPA. Sec. 4-166 (a). Although the MERA delineates appeal procedures pursuant to the act, these procedures co-exist with the review available under the UAPA which "provides a vehicle for judicial review as an alternative to preexisting statutes." McDermott v. Comm'r of Children 
Youth Services, 168 Conn. 435, 440-441, 363 A.2d 103 (1975). The review provided by MERA may be broader than that of the UAPA "without offending the purpose of Sec. 4-189" [repealing those sections of the Connecticut statutes which are inconsistent with the UAPA]. McDermott at pp. 440-441, n. 4. Other courts have decided appeals from decisions of the Board pursuant to the UAPA. See, Local Union No. 1522, International Ass'n of Firefighters v. Conn. State Board of Labor Relations, 31 Conn. Sup. 15, 319 A.2d 511 (C.P. 1973); Local 1344, Council No. 4, AFSCME v. Conn. State Board of Labor Relations, 30 Conn. Sup. 259, 309 A.2d 696 (C.P. 1973).
Council #4, AFSCME, AFL-CIO v. Connecticut State Board of Labor Relations, Superior Court, Judicial District of Fairfield, Docket No. 114261 (February 14, 1980, Hull, J.); see also Lieberman v. Board of Labor Relations, 216 Conn. 253, 257, 259,261, 271-73, 579 A.2d 505 (1990); Local 1378, Council 4, AFSCME, AFL-CIO v. Connecticut State Board of Labor Relations,2 CSCR 859 (July 14, 1987, Leuba, J.); National Association of Government Employees, Local RI-200 v. Connecticut State Board of CT Page 3834 Labor Relations, 2 CSCR 791, 792 (July 13, 1987, Dorsey, J.); Local 51, American Federation of School Administrators v. State Board of Labor Relations, 2 CSCR 351, 352 (February 11, 1987, Hammer, J.)
General Statutes 4-183 (a) states:
 A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court. . . .
A. Aggrievement
Unless a party can establish aggrievement, he has no standing to appeal under the Uniform Administrative Procedures Act. Light Rigging Co. v. DPUC, 219 Conn. 168, 172,529 A.2d 326 (1991); CBIA v. CHHC, 214 Conn. 726, 729, 573 A.2d 736
(1990); State Medical Society v. Board of Examiners in Podiatry,203 Conn. 295, 299, 524 A.2d 636 (1987). The party claiming aggrievement must demonstrate a specific, personal and legal interest in the subject matter of the decision as opposed to a general interest shared by the community as whole. Light Rigging, supra, 173; CBIA, supra, 730. The party must also establish that this interest has been specially and injuriously affected by the decision. Light Rigging, supra, 173; CBIA, supra, 730. Aggrievement is established if there is a possibility as opposed to a certainly that some legally protected interest has been adversely affected. State Medical Society, supra, 300.
In the instant case, the Union is and has been the exclusive representative of the city's employees collecting refuse in the fourth district of the City of Norwalk pursuant to a collective bargaining agreement between the City and the Union. The Union, therefore, has a specific, personal and legal interest in the subject matter of the Board's decision in that the decision involves the legal rights and obligations of the Union under MERA and under their collective bargaining agreement. The Union's legal interest in the decision has been specially and injuriously affected in that the Board ruled against the Union in favor of the City.
B. Timeliness
A party taking an appeal must do so by filing the appeal with the Superior Court and serving the agency that rendered the final decision and all parties listed in the final decision within forty-five days of the mailing of the final decision. General Statutes 4-133 (c). Where there is no mailing date CT Page 3835 indicated in the record, it is appropriate for the reviewing court to utilize the date of the final decision in determining if service was made within the statutorily proscribed time. Royce v. Freedom of Information Commission, 177 Conn. 584,585-86, 418 A.2d 939 (1979). In the present action, the decision of the Board is dated April 30, 1991 and service was made upon the Board on June 5, 1991 (36 days) and the City of Norwalk on June 4, 1991 (35 days). The appeal was received in the court clerk's office on June 10, 1991 and filed on June 11, 1991 (42 days). Therefore, the appeal is timely.
III DISCUSSION
A. The Scope of Judicial Review
The Uniform Administrative Procedures Act, as codified in General Statutes 4-183(j), governs judicial review of an administrative agency's action. Board of Education v. FOIC,308 Conn. 442, 452, 545 A.2d 1064 (1988). However, the scope of the court's review is limited. All Brand Importers v. Dept. of Liquor Control, 213 Conn. 184, 192, 567 A.2d 1156 (1989).
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . .
General Statutes 4-183 (j).
In addition, the court "may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact.' (Citations omitted)." Lieberman, supra, 262. "`Rather, an agency's factual and discretionary determinations are to be accorded considerable weight by the courts . . . .' (Citations omitted)." Id.
The Supreme Court has held that "[i]f the [Board's] findings are supported by substantial evidence, they cannot be disturbed. Substantial evidence is evidence which carries CT Page 3836 conviction. It is such evidence as a reasonable mind might accept as adequate to support a conclusion. It means something more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established." (Citations omitted). L. Suzio Construction Co. v. State Board of Labor Relations, 148 Conn. 135, 138, 168 A.2d 553 (1961); see also Norwich v. Norwich Fire Fighters, 173 Conn. 210, 214,377 A.2d 290 (1977); Imperial Laundry, Inc. v. State Board of Labor Relations, 142 Conn. 457, 461, 115 A.2d 439 (1955).
The crux of the Union's argument is that the Board's decision was in error because subcontracting is a mandatory subject of bargaining under MERA. The Union further argued that the Board erred in not determining whether the failure to bargain over subcontracting is a repudiation of Article XIX of the collective bargaining agreement which concerns subcontracting.
The Board, in turn, argues that their decision was not in error because there was substantial evidence on the record showing that the work performed by the Union members. Further, the Board argues that the Board was not in error for failing to determine whether there was a repudiation of the collective bargaining agreement, because the Union failed to address this issue in the complaint and at the hearing.
B. Repudiation of the Collective Bargaining Agreement
The plaintiff further argues in support of its appeal that the Board failed to address the Union's contention that the City repudiated Article XIX of the collective bargaining agreement.
 There shall be no subcontracting except as currently established. If a new situation arises that may concern subcontracting, such issues shall be subject to prior notification, negotiations, and mutual agreement of the parties.
However, the Union failed to raise this issue in either its complaint or at the hearing. "To allow a court to set aside an agency's determination `upon a ground not therefore presented . . . deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action.'" Hartford Electric Light Co. v. Water Resources Commission,162 Conn. 89, 107, 291 A.2d 721 (1971) quoting Unemployment Compensation Commission v. Aragon, 329 U.S. 143, 155,67 S.Ct. 245,91 L.Ed. 136 (1946); see also Anacona v. Norwalk, 217 Conn. 50,54 n. 6.
Therefore, plaintiff's assertion that the Board failed to determine whether there was a repudiation of the collective CT Page 3837 bargaining agreement cannot be addressed by this court on appeal.
C. Duty to Bargain in Good Faith
In Connecticut, MERA extended the rights and obligations of collective bargaining to employees of local government. Shortt v. New Milford Police Department, 212 Conn. 294, 301, 562 A.2d 7
(1989); New Haven v. State Board of Labor Relations, 36 Conn. Sup. 18,24, 410 A.2d 140 (Super.Ct. 1979). General Statutes 7-740(a), a subsection of MERA which sets forth prohibited acts of employers and employee organizations, states: "Municipal employers or their representatives or agents are prohibited from . . . . (4) refusing to bargain collectively in good faith with an employee organization which has been designated in accordance with the provisions of said sections as the exclusive representative of employees in an appropriate unit." In addition, the term "bargain collectively" is defined as:
 the performance of the mutual obligation of the municipal employer or his designated representatives and the representative of the employee to meet at related to the budget-making process, and confer in good faith with respect to wages, hours and other conditions of employment.
General Statutes 7-470 (c).
The language of MERA is patterned after the National Labor Relations Act, 29 U.S.C. § 151 et seq. The Connecticut Supreme Court has stated that "judicial interpretation frequently accorded the federal act is of great assistance and persuasive force in the interpretation of our own acts." West Hartford Education Association, Inc. v. DeCourcy, 162 Conn. 566, 579,295 A.2d 526 (1972); see also Board of Education v. State Board of Labor Relations, 217 Conn. 110, 120, 584 A.2d 1172 (1991); Norwich v. Norwich Firefighters, supra, 215.
"The `duty to bargain in good faith' is a term of art in labor law." Board of Education, supra, 120. This duty is ongoing, continuing after contract negotiations have been completed, and applies to labor-management relations during the term of an agreement. Id. NLRB v. Acme Industrial Co.,385 U.S. 432, 436, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967). In addition, "`[g]oing through the motions' does not fulfill the duty to bargain in good faith." Board of Education, supra, 121.
One way in which an employer fails to fulfill the duty to bargain in good faith is by failing to bargain before making unilateral changes in the terms and conditions of employment CT Page 3838 after a contract has been signed. NLRB v. Katz, 369 U.S. 736,743, 8 S.Ct. 1107, 8 L.Ed.2d 230 (1962); Board of Education, supra, 121; West Hartford Education Association, Inc., supra, 596. In addition, the term or condition of employment that has been changed must involve a mandatory subject of bargaining. NLRB v. Katz, supra, 743.
The contracting out of bargaining unit work (i.e. subcontracting) has long been held to be a mandatory subject of bargaining. Fibreboard Paper Products v. NLRB, 379 U.S. 203,215, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964); Puerto Rico Telephone Co. v. NLRB, 359 F.2d 983, 986 (1st Circuit, 1966); United States v. Polishi, 416 F.2d 569, 572 (10th Circuit, 1969); Westinghouse Electric Corporation v. Local 711, 550 NLRB 1574, 1575 (1965); West Hartford Educational Association, Inc., supra, 582. In Fibreboard, although the Supreme Court recognized subcontracting as a mandatory subject of bargaining, it limited its holding to the facts of that case:
 We are thus not expanding the scope of mandatory bargaining to hold, as we do now, that the type of "contracting out" involved in this case — the replacement of employees in the existing bargaining unit with those of an independent contractor to do the same work under similar conditions of employment — is a statutory subject of collective bargaining under 8(d). Our decision need not and does not encompass other forms of "contracting out" or "subcontracting" which arises daily in our complex economy.
Fibreboard Paper Products, supra, 215. A limitation implicit in this holding, and explicit in decisions of the National Labor Relations Board and the U.S. Court of Appeals is that an employer need only negotiate with a Union prior to contracting out work which has always been performed by the Union members. Japan Air Lines v. International Association of Machinists and Aerospace Workers, AFL-CIO, 538 F.2d 46, 52 (2nd Circuit, 1976). Town of Watertown, State Labor Relations Board (hereinafter "SLRB") Decision No. 2515, p. 4 (August 13, 1986); Board of Education of the City of Hartford, SLRB Decision No. 1938, p. 4 (September 19, 1980). Furthermore, the Connecticut State Labor Relations Board has consistently held that if work is performed by both bargaining unit members and non-bargaining unit members, a continuation of this "sharing" of work does not violate MERA. Town of Watertown, supra, 4; Board of Education of the City of Hartford, supra, 4.
In addition, the Board found that in the City of Norwalk, CT Page 3839 the collection of refuse has been consistently shared between the Union members and private refuse haulers. (ROR, Decision No. 2912, p. 3). However, the Board applied the concept of "sharing" in the present action in manner inconsistent with its previous rulings.
In previous actions, the typical fact pattern presented to the Board involved a municipal employer who employs (as opposed to subcontracting with) both union and nonunion people to perform the same work. Board of Education of the City of Hartford, supra, (Work not requiring a teaching certificate was shared between union and nonunion members employed by the municipality); Town of Watertown, supra, 4 (Municipality utilized both union and nonunion employees to haul materials to its sanding and oiling operations).
In the present action, however, there has been no sharing of work between the union members and the private refuse haulers because the municipality did not employ both the union members and the employees of the private haulers. The municipality utilized only the members of the sanitation department, all of whom were members of the Union, for the collection of refuse in the fourth district, and their work was shared with no other nonunionized employees of the municipality. (ROR, Transcript, p. 56). The fact that nonunionized employees of other, private employers were also collecting refuse does not support a finding of "shared" work. Such a finding would lead to the bizarre and irrational result of concluding that an employer of only unionized employees can always subcontract out union work as long as different employer, performing the same service or making the same product, has nonunion employers.
When the City subcontracted the pickup of recyclables (which included the collection of recyclables in the fourth district), the Union members were forced to share their work for the first time. Although the private refuse haulers performed the same or similar job as the Union members, they did not share work with the Union members.
Based on the record below, the Court finds the Board incorrectly determined that the work to the Union members was shared with non-bargaining unit members. However, this finding does not end the Court's inquiry. Although the Board only discussed shared work, it failed to make findings on several other factors concerning the duty of an employer to bargain concerning subcontracting.
It has been well established in the federal courts, National Labor Relations Board, and the Connecticut State Board of Labor Relations that in determining an employer's obligation CT Page 3840 to bargain collectively with respect to subcontracting, a reviewing body should consider the five factors set forth in Westinghouse Electric Corp., 150 NLRB 1574, 1576 (1965).
 In the Fibreboard line of cases, where the Board has found unilateral contracting out of work to be a violation of Section 8(a)(5) and (1), it has invariably appeared that the contracting out involved a departure from previously established operating practices, effected a change in conditions of employment, or resulted in a significant impairment of job tenure, employment security, or reasonably anticipated work opportunities for those in the bargaining unit.
Plainville Board of Education, SLRB Decision No. 1192, p. 5 (January 18, 1974) quoting Westinghouse Electric Corp., supra, 1576. See also Olinkraft v. National Labor Relations Board,666 F.2d 302, 306 (8th Circuit, 1982); Equitable Gas Co. v. National Labor Relations Board, 637 F.2d 980, 986 (3rd Circuit, 1981); Amcar Division v. National Labor Relations Board, 596 F.2d 1344,1349 (Eighth Circuit, 1979).
Since the Board made no findings with regard to several of these factors, the case is remanded to the Board to make the appropriate findings under the Westinghouse guidelines.
Whether the work being subcontracted out:
 1. ". . . [w]as motivated solely by economic considerations; . . .
 [2.] . . . comported with the traditional methods by which the [employer] conducted its business operations; . . .
 [3.] . . . during the period here in question [varied] significantly in kind or degree from what had been customary under past established practice; . . .
 [4.] . . . had no demonstrable adverse impact on employees in the unit; and . . .
 [5.] . . . the Union had the opportunity to bargain about changes in existing subcontracting practices at general negotiating meetings . . . ."
See Westinghouse Electric Corp. v. Local 711, 150 NLRB 1574, 1577 (1965). CT Page 3841
So ordered.
BY THE COURT, JONATHAN J. KAPLAN, JUDGE